821 A.2d 1238

**In re Isaac HICKSON,**

**Appeal of Leon A. Williams, Esquire.**

**In re Robert MARTINEZ,**

**Appeal of Leon A. Williams, Esquire.**

Supreme Court of Pennsylvania.

Argued April 9, 2003.

Decided April 25, 2003.

128

Leon Williams, Philadelphia, for Leon Williams.

Hugh J. Burns, Catherine Lynn Marshall, Richard A. Sprague, Philadelphia, for Commonwealth of Pennsylvania.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION

Chief Justice CAPPY.

At issue in these appeals is who has standing to seek judicial review of a district attorney's disapproval of his private criminal complaint. For the reasons that follow, we affirm the orders of the Superior Court.

On September 26, 1997, state parole agents Isaac Hickson ("Hickson") and Robert Martinez ("Martinez") shot and killed Kenneth Griffin ("Griffin") while attempting to arrest him. Griffin was wanted for absconding from a halfway house and was a suspect in an armed robbery that occurred earlier that month.

The Philadelphia District Attorney ("District Attorney") presented the matter of Griffin's death to an investigating grand jury. The grand jury ultimately concluded that criminal charges against Martinez and Hickson were unwarranted.

Subsequently, Leon Williams, Esquire ("Appellant") filed two private criminal complaints against Hickson and Martinez, charging them with murder, manslaughter and related crimes. Appellant, who is an attorney practicing in Philadelphia, is not related to the Griffin family and did not act on their behalf in filing the complaints. Noting that the grand jury had concluded that no charges should be brought against Hickson and Martinez, the District Attorney declined to approve Appellant's private criminal complaints.

Pursuant to Rule 106 of the Pennsylvania Rules of Criminal Procedure,[1] Appellant sought review of the District Attorney's decision. The District Attorney argued that Appellant lacked standing to seek review of the District Attorney's refusal of

1. Rule 106 has been renumbered as Rule 506. *See* Pa.R.Crim.P. 506.

the criminal complaints as Appellant was not a relative of Griffin and was not otherwise involved in the shooting. Also, the District Attorney claimed that her disapproval of the private criminal complaints was a policy decision that was entitled to deference by the trial court.

The trial court rejected the District Attorney's standing argument as Rule 106 did not place any limitation on who may seek review of a denial of a private criminal complaint. Furthermore, the trial court held that the District Attorney committed an abuse of discretion when she did not detail her reasons for disapproving the private criminal complaints. Finding that the evidence established that there was a *prima facie* case for charges of third degree murder, voluntary manslaughter, and other related offenses, the trial court directed the District Attorney to approve Appellant's complaints and file charges against Hickson and Martinez.

The District Attorney filed an appeal. Soon thereafter, the District Attorney filed a "Petition to Vacate Current Briefing Schedule and Remand for After–Discovered Evidence" with the Superior Court. She argued that she had recently learned that Appellant intended to run for the office of district attorney of Philadelphia at the next election, and was pursuing the complaints against Hickson and Martinez in order to advance his own political career. Also, the District Attorney alleged that Appellant had a personal financial interest in the matter as he had entered into a contingent fee agreement with members of Griffin's family with regard to any recovery the Griffin family received in a civil lawsuit.[2] The District Attorney alleged that such motivations were inherently improper, and militated that the complaints should be disapproved. She requested a remand and a hearing on this matter. The Superior Court granted the District Attorney relief, and remanded this matter with the direction that the trial court hold an evidentiary hearing.

The trial court, after holding a hearing, concluded that the new evidence that the District Attorney allegedly uncovered

---

2. As noted *supra,* Appellant was not retained by the Griffin family to file these private criminal complaints.

did not constitute after-discovered evidence. Thus, the trial court "reaffirmed" its earlier order directing the District Attorney to file the complaints against Hickson and Martinez.

On appeal, the Superior Court reversed, finding that Appellant lacked standing. Utilizing the common law test for determining whether a party had standing, it reasoned that only "victims, their named representative or, in the event of a victim's death, a family member" have a substantial, direct and immediate interest in seeking judicial review of the disapproval of a private criminal complaint, and thus only they would have standing. *In re Hickson*, 765 A.2d 372, 382 (Pa.Super.Ct.2000). As Appellant was not related to Griffin and was not a named representative of the Griffin family, the Superior Court concluded that Appellant lacked standing.

Judge Johnson dissented. He reasoned Appellant was not compelled to establish standing as Rule 106 contains no such requirement. In the alternative, Judge Johnson posited that even if standing were a requirement, the individual who sought judicial review of a district attorney's decision to disapprove a private criminal complaint filed by that individual would indeed have standing. Judge Johnson reasoned that "the complainant's interest in seeking review of his or her disapproved complaint 'surpasses the common interest of all citizens in procuring obedience to the law' because the private criminal complainant was the individual who filed the complaint." *Id.* at 385–86 (citation omitted). Throughout his dissent, Judge Johnson indicated his concern over the majority's recognition that the victim, the victim's family, or personal representative have a substantial, direct, and immediate interest in seeing the alleged perpetrators brought to trial, an interest distinct from and more significant than that held by a member of the general public. In his opinion, such a holding was grossly misguided as "a victim has no greater interest in the prosecution of a criminal than does any other member of the public." *Id.* at 385.

Appellant then filed a petition for allowance of appeal with this court, and we granted allocatur.

■ The sole issue before this court is whether a person who is not the victim, a member of the victim's family, or a named representative of the victim or victim's family has standing to seek judicial review of a district attorney's disapproval of private criminal complaints filed pursuant to Pa. R.Crim.P. 106.[3] As this is a question of law, our standard of review is *de novo*. Furthermore, our scope of review in this matter is plenary as we may examine the entire contents of the record. *See Phillips v. A–Best Products Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

Appellant asserts that this court has never dictated that a party must have standing in order to seek judicial review of the disapproval of a Rule 106 private criminal complaint. Appellant views this silence as a negation of such a standing requirement. Appellant is correct in stating that we have never affirmatively required that a party seeking review of a disapproval of a private criminal complaint must have standing. Yet, the converse of this proposition is also true: we have never stated that standing is irrelevant in the Rule 106 private criminal complaint context. Thus, this argument merely establishes that we are confronted with an issue of first impression for this court.

Rule 106 is also silent on the issue of standing.[4] Again, Appellant believes that this silence speaks volumes, and im-

---

3. As mentioned by the Superior Court below, there is a separate, statutory vehicle for bringing a private criminal complaint. *See* 16 Pa.C.S. § 1409. Yet, in requesting the trial court's review of the District Attorney's disapproval of his complaints, Appellant relied solely on Rule 106. As Appellant had predicated his challenge before the trial court solely on Rule 106, and as that rule and 16 Pa.C.S. § 1409 are not synonymous, we decline to engage of a discussion of whether § 1409 encompasses a standing requirement, and what the contours of that requirement might be.

4. Rule 106 states, in pertinent part:

Approval of Private Criminal Complaints
(a) When the affiant is not a law enforcement officer, the complaint shall be submitted to an attorney for the Commonwealth, who shall approve or disapprove it without unreasonable delay.

plies that since the rule makes no reference to a standing requirement, no such requirement exists. While the express terms of the rule do not enunciate a standing requirement, the conclusion that no such a requirement therefore exists is not that statement's logical corollary. A single rule cannot reiterate all statutory, rule-based, or judicially-created doctrines that govern the inception and course of the litigation. Thus, we do not believe that silence in Rule 106 marks the end of our inquiry on the standing issue.

 We believe the most prudent approach to this issue is to examine the theoretical supports for the traditional standing approach, and determine whether they have any applicability to a situation such as the matter *sub judice*. We have stated as a general policy that "[a] party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish that he has standing to maintain the action." *Bergdoll v. Kane*, 557 Pa. 72, 731 A.2d 1261, 1268 (1999) (citation omitted). Our Commonwealth's standing doctrine is not a senseless restriction on the utilization of judicial resources; rather, it is a prudential, judicially-created tool meant to winnow out those matters in which the litigants have no direct interest in pursuing the matter.[5] Such a requirement is critical because only when "parties have sufficient

> (b)If the attorney for the Commonwealth:
> * * * * * *
> (2) disapproves the complaint, the attorney shall state the reasons on the complaint form and return it to the affiant. Thereafter, the affiant may petition the court of common pleas for review of the decision.

5. We note that in the federal courts, the standing doctrine springs from a constitutional source. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 109 S.Ct. 2037, 2043, 104 L.Ed.2d 696 (1989) (the federal courts' standing doctrine springs from the "case or controversy" requirement contained in Article III of the United States Constitution). State courts, however, are not governed by Article III and are thus not bound to adhere to the federal definition of standing. *Id.* at 2045; *see also Erfer v. Commonwealth*, 568 Pa. 128, 794 A.2d 325, 329 (2002). Furthermore, the Pennsylvania Constitution has no counterpart to Article III's "case or controversy" requirement. While it is not constitutionally compelled, our standing doctrine nonetheless has a long, venerable history as a useful tool in regulating litigation. *See, e.g., Appeal of Lansdowne Borough Board of Adjustment*, 313 Pa. 523, 170 A. 867 (1934).

interest in a matter [is it] ensure[d] that there is a legitimate controversy before the court." *In re T.J.*, 559 Pa. 118, 739 A.2d 478, 481 (1999).

In practical terms, we are assured that there is a legitimate controversy if the proponent of a legal action has somehow been "aggrieved" by the matter he seeks to challenge. *Independent State Store Union v. Pennsylvania Liquor Control Board*, 495 Pa. 145, 432 A.2d 1375 (1981). A litigant can establish that he has been "aggrieved" if he can show that he has a substantial, direct and immediate interest in the outcome of the litigation in order to be deemed to have standing. *Bergdoll v. Kane*, 557 Pa. 72, 731 A.2d 1261, 1268 (1999). "A 'substantial' interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A 'direct' interest requires a showing that the matter complained of caused harm to the party's interest. An 'immediate' interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it." *Id.* (citation omitted). Yet, if that person "is not adversely affected in any way by the matter he seeks to challenge[, he] is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law." *Independent State Store Union*, 432 A.2d at 1379–80 (Pa.1981) (citation omitted).

After careful consideration, we hold that traditional standing principles are equally applicable in the Rule 106 context as they are to other matters. Of particular importance is the assurance that there is indeed a legitimate controversy before the court. In fact, we find it difficult to fathom when this assurance would prove to be more critical than when the subject matter is the alleged commission of criminal acts and the prosecution of individuals for their alleged role in those acts.

Having determined that, in general, the traditional approach to standing has a place in Rule 106 matters, we must now determine who has standing to seek judicial review of the disapproval of a private criminal complaint. The Superior Court found that only victims, their families or representatives have such an interest. Appellant claims that this determination was in error. He states that the goal of the Commonwealth's criminal justice system is not to vindicate the victim, but rather is to redress the harm done to society as a whole. *See, e.g., Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227, 231 (1976). Since this is the underpinning of the criminal justice system, Appellant contends, then any person's interest in bringing a private criminal complaint is identical to any other person's. As a corollary, Appellant asserts that focusing on whether the person bringing the criminal complaint was personally harmed by the crime is antithetical to our criminal law jurisprudence.

Appellant's argument is intriguing. Yet, we find that it is inapt. Appellant's contention presupposes that Rule 106's private criminal complaint process springs from this Commonwealth's view that crimes affect the citizenry as a whole, and are most appropriately prosecuted by a governmental entity. It does not. Rather, its historical genesis long predates our modern system's belief that crime injures society as a whole.

In colonial Pennsylvania, crimes were viewed "as an offense against the individual victim[,]" and private prosecutions were the most common mode by which the criminal justice system functioned in the colonial era. Note, *The Constitutional Validity of Pennsylvania Rule of Criminal Procedure 133(B)(2) and the Traditional Role of the Pennsylvania Courts in the Prosecutorial Function*, 52 U.Pitt.L.Rev. 269, 274 (1990) (hereinafter *"Pennsylvania Courts in the Prosecutorial Function"*). This was consonant with the English common law principle that "the Crown did not supply a public prosecutor to handle routine felonies. The victim or his family was therefore required to hire counsel to bring the guilty party into the criminal justice system." *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55, 57 (1979). In fact, the victim served a multi-

function role, in which he apprehended, prosecuted, and sometimes even jailed the accused. *Pennsylvania Courts in the Prosecutorial Function, supra,* at 274.

In the post-Revolutionary era, the state, as the representative for society as a whole, began to be seen as the injured party in criminal matters, and the role of the government in prosecuting criminal matters began to grow; ultimately, the Pennsylvania Legislature established the office of district attorney in 1850. *See id.* at 275. Yet, with this shift in how crimes were generally prosecuted, a citizen's right to pursue his victimizer in criminal courts via a private criminal complaint was never abolished in this Commonwealth. Rather, the Legislature enshrined it in statutory enactments, *id.,* and later, this court provided an avenue via the predecessor to Rule 106.

Based on this history, we find that provisions authorizing private criminal complaints, such as Rule 106, have their roots in a time when crimes were viewed as an offense against individuals rather than the state, visiting upon directly involved parties a harm greater than that experienced by the population as a whole. Thus, in contrast to the prosecutions initiated by the Commonwealth, it is the recognition that a crime has caused an individual a substantial, direct, and immediate injury that is a personal one that animates Rule 106 prosecutions. This is the interest—the interest of seeking justice for harm arising from a crime that directly impacted on oneself—that must be established to show that a party may seek judicial review of the disapproval of a private criminal complaint brought pursuant to Rule 106.

The Superior Court sharply defined which types of people could meet this standing test. Namely, the lower court stated that only victims, their families or designated personal representatives would have standing. We agree that in most instances, it will be the victim or the victim's family that can meet such a test. It is axiomatic that those most likely to be affected by a crime will be the victim himself or his relatives. It may even be quite rare that an individual outside this group would be able to meet the standing test. Yet, unlike the

Superior Court below, we do not find it prudent to limit standing artificially to this group of people. Rather, it is possible that other individuals who are not related to the victim may be able to show that the crime visited upon them a substantial, direct and immediate injury.

We now turn to applying this test to Appellant. First, we note that Appellant does not allege that he is related to Griffin. Yet, as noted *supra*, this is not dispositive of the issue; rather, we must analyze whether Appellant has alleged facts that establish that he has been personally aggrieved by Griffin's death. We find that he has failed to meet this standard. First, he has not established any peculiar, individualized interest in the outcome of the litigation that is greater than that of any other citizen. Thus, his interest is not "substantial". *See Bergdoll, supra.* Furthermore, Appellant cannot show that Griffin's death harmed him personally in any fashion; thus, Appellant has no "direct" interest. *Id.* Finally, as Appellant cannot show that Griffin's death harmed him in any particular manner, he cannot show that he had an "immediate" interest. *Id.* As Appellant has no direct, substantial, or immediate interest in seeking review of the District Attorney's disapproval of the private criminal complaints filed against Hickson and Martinez, we find that the Superior Court properly denied Appellant relief on the basis that he lacked standing in this matter.[6]

6. We acknowledge that in civil matters, we allow, in rare instances, a citizen to litigate a matter in which he has no substantial, direct, and immediate interest. We permit such global standing in situations in which the people directly affected by the conduct in question were unlikely to complain as the conduct impacted them in a positive, rather than a negative, fashion. *See Sprague v. Casey,* 520 Pa. 38, 550 A.2d 184, 187 (1988). Our rationale for relaxing the standing requirement in such situations was that if we did not, these types of matters would likely escape judicial review entirely as the real parties in interest would be disinclined to file a complaint.

Even if we were to expand this doctrine of global standing from the civil to the criminal arena, there is no compelling reason to do so in the matter *sub judice.* This is not a situation in which the parties who do have a direct, substantial, or immediate interest would lack the motivation to pursue a private criminal complaint. In fact, it is hard to imagine a situation in which the directly affected parties would be more

140

Thus, for the foregoing reasons, we conclude that Appellant lacked standing to seek review of the District Attorney's disapproval of his private criminal complaint. We therefore affirm the orders of the Superior Court, albeit for different reasons.

Former Chief Justice ZAPPALA did not participate in the decision of this matter.

motivated to pursue litigation than where the victim has allegedly been murdered.