849 A.2d 1145

**DAUPHIN COUNTY PUBLIC DEFENDER'S OFFICE, Petitioner**

v.

**COURT OF COMMON PLEAS OF DAUPHIN COUNTY, Respondent.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 2003.

Decided May 27, 2004.

George Schultz, Harrisburg, for Dauphin County Public Defenders Office.

David M. Donaldson, Howard M. Holmes, Philadelphia, for CCP Dauphin County.

Before CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION OF THE COURT

Justice NIGRO.

We assumed jurisdiction in the instant case to determine whether the Dauphin County Court of Common Pleas (the "Dauphin County CCP") has the authority to institute financial eligibility requirements that effectively prohibit the Dauphin County Public Defender's Office (the "Public Defender") from representing criminal defendants who the Public Defender might otherwise deem eligible for its representation. For the following reasons, we hold that the Dauphin County CCP does not have such authority.

Prior to July 22, 2003, the Public Defender had complete discretion to determine who was eligible to obtain its legal

representation. In exercising that discretion, the Public Defender would conduct its own independent analysis of a variety of factors that it believed to be relevant to an applicant's eligibility, only one of which was the applicant's income. If the Public Defender found, based on its analysis in any given case, that the applicant was not able to afford private legal representation, it would assume responsibility for the applicant's defense.

However, on July 22, 2003, President Judge Joseph Kleinfelter of the Dauphin County CCP issued an Administrative Order that dictated new eligibility requirements for criminal defendants seeking representation from the Public Defender (the "Administrative Order"). The requirements, which were based on the Federal Poverty Income Guidelines promulgated by the U.S. Department of Health and Human Services, set forth specific income levels that an applicant's income could not exceed if he or she was to qualify for Public Defender representation.[1] For example, pursuant to the order, a single

1. **The** Administrative Order states the following:

> AND NOW, JULY 22nd, 2003,
> IT IS HEREBY ORDERED that, effective immediately, the Dauphin County Public Defender shall use the U.S. Department of Health and Human Services Poverty Guidelines as a basis for eligibility for representation in all cases. To qualify for representation, an applicant's income may not exceed the amount shown.

> The 2003 Federal Health and Human Service Guidelines are as follows:

| Number in Family | Gross Yearly Income | Gross Monthly Income | Approximate Hourly Income |
|---|---|---|---|
| 1 | $ 8,980 | $ 748 | $ 4.32 |
| 2 | $12,120 | $ 1,010 | $ 5.83 |
| 3 | $15,260 | $ 1,272 | $ 7.32 |
| 4 | $18,400 | $ 1,533 | $ 8.85 |
| 5 | $21,540 | $ 1,795 | $10.36 |
| 6 | $24,680 | $ 2,057 | $11.87 |
| 7 | $27,820 | $ 2,318 | $13.38 |
| 8 | $30,960 | $ 2,580 | $14.88 |
| Over 8 add for each person | + 3,140 | + 262 | + 1.51 |

> "Number in Family" is defined as that number of persons (including the applicant) who live together and for whom the

person with an annual gross income exceeding $8,980, which corresponds to an hourly income of approximately $4.32, would be financially ineligible for representation by the Public Defender. Similarly, by way of the order, no member of a family of four could be represented by the Public Defender unless that family had a collective annual gross income of $18,400 or less.

On August 22, 2003, the Public Defender filed a Petition for Writ of Prohibition with this Court, seeking (a) an immediate stay of the Administrative Order, and (b) a writ prohibiting the Dauphin County CCP from interfering with the Public Defender's qualification process for determining eligibility for legal representation. This Court assumed jurisdiction over the matter and stayed the Administrative Order on September 15, 2003.[2] The parties were provided with an expedited schedule in which to brief the issues raised by the Public Defender.

As a threshold issue, the Dauphin County CCP, represented by the Administrative Office of Pennsylvania Courts, asserts that the Public Defender does not have standing to maintain this action. Of course, any "party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish that he has standing to maintain the action." *Nye v. Erie Ins. Exchange*, 504 Pa. 3, 470 A.2d 98, 100 (1983). To do so, that party must show that he has "somehow been 'aggrieved' by the matter he seeks to challenge." *In re Hickson*, 573 Pa. 127, 821 A.2d 1238, 1243 (2003) (quoting *Independent State Store Union v. Pennsylvania Liquor Control Bd.*, 495 Pa. 145, 432 A.2d 1375, 1379–1380 (1981)). A litigant can show that he has been aggrieved if he

applicant is legally responsible for financial support. "Income" is defined as income from all sources.

The Public Defender shall require an applicant for representation to fully answer questions relating to family size and income under penalty of prosecution for the crime of Unsworn Falsification to Authorities, 18 Pa.C.S.A. § 4904.

2. We have original jurisdiction over matters that involve "prohibition to courts of inferior jurisdiction." 42 Pa.C.S. § 721.

can show that he has a substantial, direct, and immediate interest in the outcome of the litigation. *See Hickson*, 821 A.2d at 1243. This Court has specified that:

> A 'substantial' interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens procuring obedience to the law. A 'direct' interest requires a showing that the matter complained of caused harm to the party's interest. An 'immediate' interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it.

*Id.* (citations omitted).

The Dauphin County CCP asserts that the Public Defender lacks standing to challenge the Administrative Order because it is not representing a specific defendant in a specific case. In making this argument, the Dauphin County CCP apparently believes that the only parties who can be "aggrieved" by the new eligibility requirements are defendants who are deprived of representation under those requirements. It therefore takes the position that the Public Defender cannot have standing in its own right, but rather may only challenge the Administrative Order if it is acting on behalf of a specific applicant for its services who was denied representation on account of the new requirements. We disagree.

Contrary to the Dauphin County CCP's assertions, we conclude that the Public Defender is "aggrieved" as it has a "substantial," "direct" and "immediate" interest in the outcome of the litigation. In that regard, we note that the Public Defender's interest in this litigation clearly exceeds that of "the common interest of all citizens procuring obedience to the law," because the Public Defender, unlike the general public, has the statutory obligation to provide legal representation to financially eligible criminal defendants. *Hickson*, 821 A.2d at 1243. Moreover, it is indisputable that the Administrative Order harms the Public Defender's interest in that it strips the Public Defender of its traditional discretion in making decisions regarding an applicant's eligibility for its services when the applicant's income exceeds the poverty line. *See id.* Finally, we note that there is a clear and immediate causal

connection between the Administrative Order and the Public Defender's diminished ability to make eligibility determinations and to provide representation to the defendants of its choice. *See id.* Accordingly, we conclude that the Public Defender is an "aggrieved" party with standing to pursue this matter.

With the standing issue resolved, we turn to the heart of the dispute before us, *i.e.,* whether the Dauphin County CCP has the authority to exclude individuals who have an income greater than the poverty line from establishing eligibility for Public Defender representation. For the following reasons, we conclude that it does not and therefore vacate the Administrative Order.

The Public Defender Act (the "Act"), 16 P.S. §§ 9960.1–9960.13, which took effect on January 1, 1969, requires counties in this Commonwealth to appoint public defenders, *id.* § 9940.3, and vests such public defenders with responsibility "for furnishing legal counsel [in various types of criminal cases] . . . to any person who, for lack of sufficient funds, is unable to obtain legal counsel." [3] *Id.* § 9960.6(a). While the Act does not specifically quantify what constitutes "sufficient funds," its language makes clear that "sufficient funds" for any given individual are those that enable that individual to hire private counsel for his or her defense. *Id.* The Act also makes clear that it is *the public defender* who must ascertain whether an individual seeking its representation has an ability to procure "sufficient funds to obtain legal counsel." *See id.* § 9960.6(b). Indeed, the Act explicitly provides that if *the*

---

**3.** The Public Defender system has its roots in the United States Constitution, which guarantees criminal defendants the right to legal assistance for their defense. U.S. Const amend. VI. To that end, the United States Supreme Court has held that each state must provide legal counsel to indigent individuals who are charged with either state felonies or misdemeanors involving possible imprisonment. *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). As Justice Black explained in *Gideon:* "In our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." 372 U.S. at 344, 83 S.Ct. 792.

*public defender* is "satisfied" of a person's inability to procure sufficient funds to hire private counsel, it "shall" provide that person with representation. *Id.*

In spite of these provisions, the Dauphin County CCP apparently concluded that it had the authority to dictate that any individual whose income exceeds that set forth in the U.S. Department of Health and Human Services Poverty Guidelines has, by definition, "sufficient funds to obtain [private] legal counsel." 16 P.S. § 9960.6(b). However, by the plain terms of the Act, the fact that the court may be "satisfied" that individuals with incomes above the poverty level can afford to hire private counsel is inconsequential as it is *the Public Defender* whose satisfaction is required. *Id.* Moreover, in challenging the Administrative Order, the Public Defender has made crystal clear that it does not agree that the poverty line accurately separates those who have the ability to procure funds for private counsel and those who do not.[4] *See* Public Defender Brf. at 12 (The Dauphin CCP's "crude attempt to set [income] guidelines would eliminate the eligibility of a multitude of individuals who may not qualify as impoverished, but lack sufficient funds to procure counsel."). As the Act *requires* the Public Defender to provide legal representation to any individual that *it* concludes does not have the financial wherewithal to hire private legal counsel, the Dauphin County CCP simply cannot require the Public Defender to turn away applicants based on an inflexible bright-line rule with which the Public Defender disagrees.[5]

4. Among other factors that may be relevant to a defendant's financial ability to hire private counsel are the probable cost of representation for the crime charged and the defendant's liabilities. *See, e.g., Commonwealth v. Brown*, 327 Pa.Super. 505, 476 A.2d 381, 386 (1984).

5. The Dauphin County CCP notes that the second part of section 9960.6(b) of the Act provides that "every person who requests legal counsel shall sign an affidavit that he is unable to procure sufficient funds to obtain legal counsel to represent him and shall provide, under oath, such other information as may be *required by the court* ...," 16 P.S. § 9960.6(b) (emphasis in Dauphin County CCP's Brf. at 18, 21), and suggests that this language establishes that the ultimate responsibility for eligibility determinations lies with the court. However, in quoting section 9960.6(b), the Dauphin County CCP tellingly omits the provision's conclusion. Indeed, the provision does not require appli-

We recognize that two sections of the Act set forth limited circumstances under which a Court of Common Pleas may become involved in the decision-making process as to whether or not an individual should be appointed a public defender. *See* 16 P.S. §§ 9960.6(c), 9960.7. However, neither of these provisions supply a statutory basis for the court to override a public defender's determination of financial eligibility. Rather, section 9960.6(c) of the Act merely permits a court to add to the public defender's client roster "persons who are or may be subject to commitment under [the Mental Health Act]." *Id.* § 9960.6(c); *see, e.g., In re Estate of Glenn,* 450 Pa. 461, 299 A.2d 203, 206 (1973) (section 9960.6 furnishes legal counsel and the machinery for a psychiatric evaluation to any person charged with an indictable offense who is unable to obtain counsel for lack of sufficient funds). Likewise, section 9960.7 merely permits the court, upon a determination of cause, to provide a defendant with court-appointed counsel, to be paid by the county, in lieu of a public defender. 16 P.S. § 9960.7; *see, e.g., Fulton v. Commonwealth, Pa. Bd. of Prob. and Parole,* 663 A.2d 865, 867–68 (1994) (appointing public defender of adjoining county when public defender in incarcerating county has conflict of interest). Accordingly, these provisions do *not* empower the court of common pleas to impose limitations on the public defender's discretion in determining financial eligibility. In fact, their very existence indicates that no such power exists as the inclusion of specific matters in a statute implies the exclusion of other matters. *See Ken R. ex rel. C.R. v. Arthur Z.,* 546 Pa. 49, 682 A.2d 1267,

cants to provide only such information "as may be required by the court," but actually requires them to provide "such other information as may be required *by the court, the public defender, or the Pennsylvania Rules of Criminal Procedure."* 16 P.S. § 9960.6(b) (emphasis added). As such, far from indicating that the court has the ultimate responsibility for eligibility determinations, the full provision merely recognizes that the court has *some* role in such determinations. Moreover, as explained in greater detail below, that role is limited and in no way either gives the court license to prohibit the public defender from representing a defendant whom it has determined qualifies for representation or otherwise alters the first part of section 9960.6(b)'s mandate that it is *the public defender* who must provide legal counsel to those *it* determines lack sufficient funds to obtain their own counsel.

1270 (1996) ("the inclusion of a specific matter in a statute implies the exclusion of other matters").

The Dauphin County CCP nevertheless argues that the Pennsylvania Rules of Criminal Procedure confer upon it the power to determine "indigency" for purposes of public defender representation. Specifically, the Dauphin County CCP points out that Pennsylvania Rule of Criminal Procedure 122(B) provides that "in all court cases counsel shall be assigned prior to the preliminary hearing to all defendants who are without financial resources or who are otherwise unable to employ counsel," Pa.R.Crim.P. 122(B), and Rule 122(C) provides that the court of its own motion shall assign counsel to represent a defendant whenever the interests of justice require it. Pa.R.Crim.P. 122(C). The Dauphin County CCP further notes that Rule of Criminal Procedure 1101(4) explicitly suspends the Public Defender Act insofar as it conflicts with Rule 122. *See* Pa.R.Crim.P. 1101(4).

█ However, while Rule 122 grants the trial court authority to *appoint* attorneys to defendants "without financial resources" or "in the interest of justice," it does not empower the court to order the public defender *not* to represent someone whom the public defender has, through the statutory discretion granted to it, deemed to be financially eligible.[6] Moreover, far from authorizing the court to dictate inflexible standards that must be applied in ascertaining financial eligibility, Rule 122 merely authorizes the court to conduct case-by-case evaluations of individual defendants' circumstances in order to ascertain whether counsel should be appointed. As such, we reject the Dauphin County CCP's assertion that Rule

---

6. Certainly, the court's determination that a particular defendant may require public defender representation may conflict with a prior determination by the public defender of financial *in*eligibility, thus explaining one rationale for Rule of Criminal Procedure 1101(4). However, individual circumstances in which the court may override a public defender's determination of financial *in*eligibility do not concern us here, as the Administrative Order does not require the Public Defender to represent defendants, but rather, prohibits it from representing a whole class of individuals whom the Public Defender might otherwise find financially eligible.

122 empowers it to prohibit the Public Defender from representing any individual whose income exceeds the poverty line.[7]

For the foregoing reasons, we hold that the Dauphin County CCP did not have authority to dictate income levels above which an individual will not be permitted to show that he or she does not have the financial resources with which to hire private counsel. Accordingly, we grant the Public Defender's Petition for Writ of Prohibition, vacate the President Judge Kleinfelter's July 23, 2003 Administrative Order and reaffirm the Public Defender's discretion to represent individuals whose income exceeds the Federal Poverty Income Guidelines promulgated by the U.S. Department of Health and Human Services, but who have satisfied the Public Defender that they are unable to obtain sufficient funds to obtain legal counsel.

Former Justice LAMB did not participate in the decision of this case.

---

7. We also reject the Dauphin County CCP's argument that the Public Defender cannot determine eligibility because it would violate the separation of powers doctrine to grant the Public Defender total control over the eligibility process, when the courts clearly have a role in that process. Dauphin County CCP's Brf. at 28 (citing *Commonwealth v. Lockridge*, 570 Pa. 510, 810 A.2d 1191, 1195 (2002) ("[A] statute cannot abrogate any of the procedural rules this court has adopted.")). As this opinion makes clear, we are not granting the Public Defender total control over the eligibility process. Rather, we retain for the courts that authority which we have granted to them through our procedural rules, *see, e.g.,* Pa.R.Crim.P. 122(B), (C), and merely reaffirm the Public Defender's shared role in ascertaining eligibility as set forth in the Public Defender Act.