# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny Reproductive Health Center,     :
Allentown Women's Center, Berger &     :
Benjamin LLP, Delaware County Women's     :
Center, Philadelphia Women's Center,     :
Planned Parenthood Keystone, Planned     :
Parenthood Southeastern Pennsylvania, and     :
Planned Parenthood of Western Pennsylvania,     :
                Petitioners     :
    :
           v.     :   No. 26 M.D. 2019
    :   Argued: October 4, 2019
Pennsylvania Department of Human Services,     :
Teresa Miller, in her official capacity as     :
Secretary of the Pennsylvania Department of     :
Human Services, Leesa Allen, in her official     :
capacity as Executive Deputy Secretary for the     :
Pennsylvania Department of Human Service's     :
Office of Medical Assistance Programs, and Sally     :
Kozak, in her official capacity as Deputy Secretary     :
for the Pennsylvania Department of Human     :
Service's Office of Medical Assistance Programs,     :
                Respondents     :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT               FILED: January 28, 2020

       Before this Court are two applications for leave to intervene. The first

was filed by 18 members of the Pennsylvania State Senate[1] (Proposed Senate

---

[1] The Senate members' application was filed by President Pro Tempore Senator Joseph B. Scarnati, III, Majority Leader Senator Jacob Corman, and Senators Ryan Aument, Michele Brooks, John DiSanto, Michael Folmer, John Gordner, Scott Hutchinson, Wayne Langerholc, Daniel Laughlin, Scott Martin, Robert Mensch, Michael Regan, Mario Scavello, Patrick Stefano, Judy Ward, Kim Ward, and Eugene Yaw. Folmer filed a Praecipe to Withdraw as a Proposed Senate Intervenor on September 19, 2019.

Intervenors) and the second was filed by eight members of the Pennsylvania House of Representatives[2] (Proposed House Intervenors) (collectively, Proposed Intervenors). On June 21, 2019, the Court denied both applications to intervene in *Allegheny Reproductive Health Center v. Pennsylvania Department of Human Services* (Pa. Cmwlth., No. 26 M.D. 2019, filed June 21, 2019) (single judge opinion by Judge Robert Simpson) (*Allegheny I*). Proposed Intervenors requested reargument, which this Court granted on July 22, 2019. Thereafter, the Court heard argument on whether Proposed Intervenors are entitled to intervene under Pennsylvania Rule of Civil Procedure No. 2327(3) and (4). Concluding that they have established grounds for intervention under Rule No. 2327(4), we grant the applications to intervene.

**Background**

On January 16, 2019, Allegheny Reproductive Health Center, Allentown Women's Center, Berger & Benjamin LLP, Delaware County Women's Center, Philadelphia Women's Center, Planned Parenthood Keystone, Planned Parenthood Southeastern Pennsylvania, and Planned Parenthood of Western Pennsylvania (collectively, Reproductive Health Centers) filed a petition for review in the nature of a complaint seeking declaratory and injunctive relief against the Pennsylvania Department of Human Services; Teresa Miller, Secretary of Human Services; Leesa Allen, Executive Deputy Secretary for Medical Assistance Programs; and Sally Kozak, Deputy Secretary for the Office of Medical Assistance Programs (collectively, Department).

---

[2] The House members' application was filed by Speaker Mike Turzai, House Majority Leader Bryan D. Cutler, Chairman of the House Appropriations Committee Stan E. Saylor, House Majority Whip Kerry A. Benninghoff, House Majority Caucus Chair Marcy Toepel, House Majority Caucus Secretary Michael Reese, House Majority Caucus Administrator Kurt A. Masser, and House Majority Policy Committee Chair Donna Oberlander.

In their petition for review, Reproductive Health Centers allege that they provide approximately 95 percent of the abortion services performed in the Commonwealth. Their patients include women enrolled in Medical Assistance,[3] which provides health insurance coverage to low-income persons. Medical Assistance coverage includes family planning and pregnancy-related care, such as prenatal care, obstetrics, childbirth, neonatal and post-partum care. However, Pennsylvania's Abortion Control Act[4] prohibits the expenditure of appropriated state and federal funds for abortion services unless (1) necessary to avert the death of the pregnant woman; (2) the pregnancy resulted from rape; or (3) the pregnancy resulted from incest. 18 Pa. C.S. §3215(c). Regulations promulgated by the Department prohibit Medical Assistance coverage for abortions except in these three circumstances. *See* 55 Pa. Code §§1141.57, 1163.62 and 1221.57.

The petition of Reproductive Health Centers contains two counts. Count I asserts that the Abortion Control Act and the Department's regulations, known as the "coverage ban," violate Pennsylvania's Equal Rights Amendment[5] because they deny coverage of a medical procedure that can be used only by women. Count II asserts that the coverage ban violates several other provisions of the Pennsylvania Constitution, *i.e.*, Article I, Sections 1 and 26 and Article III, Section 32,[6] that establish the guarantee of equal protection of the laws. Reproductive Health

---

[3] Medical Assistance "is a joint federal and state program, and must be administered consistent with both federal and state law." *Eastwood Nursing and Rehabilitation Center v. Department of Public Welfare*, 910 A.2d 134, 136 (Pa. Cmwlth. 2006) (internal footnote and emphasis omitted).

[4] 18 Pa. C.S. §§3201-3220.

[5] It states:

> Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual.

PA. CONST. art. I, §28.

[6] Article I, Section 1 states:

Centers contend that the coverage ban restricts indigent women in the exercise of their right to terminate a pregnancy and thereby violates the Pennsylvania Constitution.

Reproductive Health Centers request this Court to declare 18 Pa. C.S. §3215(c) and (j) and the related regulations unconstitutional and to enjoin their enforcement.[7] In *Fischer v. Department of Public Welfare*, 502 A.2d 114, 116 (Pa.

---

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

PA. CONST. art. I, §1. Section 26 states:

Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

PA. CONST. art. I, §26. Article III, Section 32 states, in relevant part, as follows:

The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law….

PA. CONST. art. III, §32.

[7] Section 3215(c) of the Abortion Control Act states:

(c)  Public funds.--No Commonwealth funds and no Federal funds which are appropriated by the Commonwealth shall be expended by any State or local government agency for the performance of abortion, except:

(1)  When abortion is necessary to avert the death of the mother on certification by a physician. When such physician will perform the abortion or has a pecuniary or proprietary interest in the abortion there shall be a separate certification from a physician who has no such interest.

(2)  When abortion is performed in the case of pregnancy caused by rape which, prior to the performance of the abortion, has been reported, together with the identity of the offender, if known, to a law enforcement agency having the requisite jurisdiction and has been personally reported by the victim.

(3)  When abortion is performed in the case of pregnancy caused by incest which, prior to the performance of the abortion, has been

1985), our Supreme Court considered a 1985 constitutional challenge to the Abortion Control Act and rejected the claim that the case even concerned "the right

---

personally reported by the victim to a law enforcement agency having the requisite jurisdiction, or, in the case of a minor, to the county child protective service agency and the other party to the incestuous act has been named in such report.

18 Pa. C.S. §3215(c). Section 3215(j) states:

(j)   Required statements.--No Commonwealth agency shall make any payment from Federal or State funds appropriated by the Commonwealth for the performance of any abortion pursuant to subsection (c)(2) or (3) unless the Commonwealth agency first:

(1)   receives from the physician or facility seeking payment a statement signed by the physician performing the abortion stating that, prior to performing the abortion, he obtained a non-notarized, signed statement from the pregnant woman stating that she was a victim of rape or incest, as the case may be, and that she reported the crime, including the identity of the offender, if known, to a law enforcement agency having the requisite jurisdiction or, in the case of incest where a pregnant minor is the victim, to the county child protective service agency and stating the name of the law enforcement agency or child protective service agency to which the report was made and the date such report was made;

(2)   receives from the physician or facility seeking payment, the signed statement of the pregnant woman which is described in paragraph (1). The statement shall bear the notice that any false statements made therein are punishable by law and shall state that the pregnant woman is aware that false reports to law enforcement authorities are punishable by law; and

(3)   verifies with the law enforcement agency or child protective service agency named in the statement of the pregnant woman whether a report of rape or incest was filed with the agency in accordance with the statement.

The Commonwealth agency shall report any evidence of false statements, of false reports to law enforcement authorities or of fraud in the procurement or attempted procurement of any payment from Federal or State funds appropriated by the Commonwealth pursuant to this section to the district attorney of appropriate jurisdiction and, where appropriate, to the Attorney General.

18 Pa. C.S. §3215(j).

5

to an abortion." It held that the funding restrictions in the Abortion Control Act did not offend Pennsylvania's Equal Rights Amendment or Article I, Sections 1 and 26 and Article III, Section 32 of the Pennsylvania Constitution. Reproductive Health Centers argue that *Fischer* was incorrectly decided; conflicts with recent developments in Pennsylvania law; and is inconsistent with the modern-day understanding that any restriction on a woman's reproductive autonomy is a form of sex discrimination. They further seek a declaration that abortion is a fundamental right under the Pennsylvania Constitution.

### *Allegheny I* Ruling

On April 17, 2019, Proposed Intervenors filed their respective applications for leave to intervene.[8] On May 21, 2019, the Court held a hearing and heard oral argument. No evidence was proffered.

Proposed Intervenors asserted that they qualified for intervention under the Pennsylvania Rules of Civil Procedure. Specifically, they invoked Rule No. 2327(3), which authorizes intervention for persons that could have been named in the original action, and Rule No. 2327(4), which authorizes intervention for persons with a legally enforceable interest at issue. Reproductive Health Centers opposed their intervention, arguing that the Proposed Intervenors lacked standing to defend the constitutionality of a statute that was enacted in 1982.

---

[8] On April 16, 2019, the Department filed preliminary objections in the nature of a demurrer to the petition for review filed by Reproductive Health Centers, asserting *Fischer v. Department of Public Welfare*, 502 A.2d 114 (Pa. 1985), established that Section 3215(c) and (j) of the Abortion Control Act is constitutional. The Department also asserts Reproductive Health Centers lack standing because they cannot sue on behalf of their patients. On April 17, 2019, Proposed House Intervenors also filed preliminary objections in the nature of a demurrer to the petition for review. On July 31, 2019, this Court suspended the briefing schedule on the preliminary objections until disposition of the applications for leave to intervene.

This Court denied intervention, reasoning, *inter alia*, that a putative intervenor must establish that he is "aggrieved," which requires *"a substantial, direct and immediate interest in the outcome of the litigation"* in order to be deemed to have standing. *Allegheny I*, slip op. at 14 (quoting *In re Hickson*, 821 A.2d 1238, 1243 (Pa. 2003)). The Court concluded that Proposed Intervenors were not aggrieved, noting that the "last iteration of the coverage ban was voted on and went into effect in 1989…." *Id.* at 15. At that point, the interest of Proposed Intervenors ended. The Court dismissed the argument of Proposed Intervenors that the outcome of this litigation will limit their legislative power to appropriate funds as "tenuous." *Id.* at 16.

On July 22, 2019, this Court granted reargument to consider the challenge of Proposed Intervenors to the decision in *Allegheny I*.

### Reargument Issues

Proposed Intervenors challenge this Court's denial of intervention on three grounds. First, they argue that the Court erred in holding that Proposed Intervenors had to establish the level of standing that is needed by a plaintiff to initiate a legal action. Second, they argue that the Court erred in holding that Proposed Intervenors could not have been named as parties in the action, a basis for intervention under Rule No. 2327(3). Third, they argue that the Court erred in holding they did not establish a legally enforceable interest in preserving the scope of their power to legislate, a basis for intervention under Rule No. 2327(4). However, Proposed Intervenors agree with this Court's holding with respect to Rule No. 2329, *i.e.*, that the Proposed Intervenors' interest in this litigation was not adequately represented by the Department.

7

## Pennsylvania Law on Intervention

Intervention is governed by the Pennsylvania Rules of Civil Procedure. Rule No. 2327 states as follows:

> At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if
>
> (1)  the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or
>
> (2)  such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or
>
> (3)  such person could have been named as an original party in the action or could have been joined therein; or
>
> (4)  the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

PA. R.C.P. No. 2327.  The corollary rule on intervention is found at Rule No. 2329, which sets forth the reasons for denying intervention.  It states as follows:

> Upon the filing of the petition and after hearing, of which due notice shall be given to all parties, the court, if the allegations of the petition have been established and are found to be sufficient, shall enter an order allowing intervention; but an application for intervention may be refused, if
>
>> (1)  the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action; or
>>
>> (2)  the interest of the petitioner is already adequately represented; or

8

(3) the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties.

PA. R.C.P. No. 2329.

This Court has held that a grant of intervention is mandatory where the intervenor satisfies one of the four bases set forth in Rule No. 2327 unless there exists a basis for refusal under Rule No. 2329. We reasoned as follows:

> Considering Rules 2327 and 2329 together, the effect of Rule 2329 is that *if the petitioner is a person within one of the classes described in Rule 2327, the allowance of intervention is mandatory, not discretionary, unless one of the grounds for refusal under Rule 2329 is present*. Equally, if the petitioner does not show himself to be within one of the four classes described in Rule 2327, intervention must be denied, irrespective of whether any of the grounds for refusal in Rule 2329 exist. Thus, the court is given the discretion to allow or to refuse intervention only where the petitioner falls within one of the classes enumerated in Rule 2327 *and* only where one of the grounds under Rule 2329 is present which authorizes the refusal of intervention.

*Larock v. Sugarloaf Township Zoning Hearing Board*, 740 A.2d 308, 313 (Pa. Cmwlth. 1999) (internal citations omitted and emphasis added).

Proposed Intervenors argue that they are "such" persons identified as appropriate intervenors in Rule No. 2327(3) and (4) and, further, there exist no grounds for refusal of intervention under Rule No. 2329. Thus, they contend that the grant of their applications for leave to intervene was mandatory and that this Court erred in otherwise holding in *Allegheny I*.

9

## I.

We begin with Pennsylvania Rule of Civil Procedure No. 2327(4) which permits intervention where the determination "*may affect* any legally enforceable interest" of a proposed intervenor. PA. R.C.P. No. 2327(4) (emphasis added). Proposed Intervenors assert that the litigation initiated by Reproductive Health Centers will certainly affect their power to legislate, *i.e.*, a "legally enforceable interest," particularly in the area of appropriating funds. Indeed, the petition for review rests expressly on Article III, Section 32 of the Pennsylvania Constitution, which is part of Chapter E, entitled "Restrictions on Legislative Power." *See* Petition for Review, ¶94 at 29. Proposed Intervenors argue that this litigation, if successful, will enlarge the restrictions on legislative power that are specified in Article III, Section 32 and create new restrictions.

There is a difference between personal standing and legislative standing, which difference this Court addressed in *Sunoco Pipeline L.P. v. Dinniman*, 217 A.3d 1283 (Pa. Cmwlth. 2019). Therein, we explained that personal standing requires a party to have a direct, immediate, and substantial interest in order to initiate litigation. *See William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280 (Pa. 1975). Nevertheless, a legislator that lacks personal standing may be able to initiate litigation in his legislative capacity, where the legislator can demonstrate an injury to his ability "to act as a legislator." *Sunoco Pipeline*, 217 A.3d at 1291.

Legislative standing was first addressed by this Court in *Wilt v. Beal*, 363 A.2d 876 (Pa. Cmwlth. 1976). There, State Representative Wilt sought to enjoin the Secretary of Public Welfare from using a newly constructed geriatric center as a mental healthcare facility; his standing as a legislator to initiate the action was

10

challenged. This Court summarized the relevant principles of legislative standing as follows:

> [L]egislators … are granted standing to challenge executive actions when specific powers unique to their functions under the Constitution are diminished or interfered with. Once, however, votes which they are entitled to make have been cast and duly counted, their interest as legislators ceases. Some other nexus must then be found to challenge the allegedly unlawful action. We find this distinction to be sound for it is clear that certain additional duties are placed upon members of the legislative branch which find no counterpart in the duties placed upon the citizens the legislators represent.

*Id*. at 881 (internal footnote omitted). Legislators have duties not shared with citizens, but enforcement of existing statutory law is not a special concern of legislators.

In *Fumo v. City of Philadelphia*, 972 A.2d 487 (Pa. 2009), state legislators challenged the City's issuance of a license for the construction of a casino upon submerged lands in the Delaware River. They asserted that the City's action had usurped their legislative authority to regulate riverbeds, a prerogative belonging solely to the General Assembly. The Supreme Court agreed, explaining as follows:

> Legislators and council members have been permitted to bring actions based upon their special status where there was a discernible and palpable infringement on their authority as legislators. The standing of a legislator or council member to bring a legal challenge has been recognized in limited instances in order to permit the legislator to seek redress for an injury the legislator or council member claims to have suffered in his official capacity, rather than as a private citizen. Legislative standing has been recognized in the context of actions brought to protect a legislator's right to vote on legislation or a council member's viable authority to approve municipal action. Legislative standing also has been recognized in actions alleging

11

> a diminution or deprivation of the legislator's or council member's power or authority. At the same time, however, legislative standing has not been recognized in actions seeking redress for a general grievance about the correctness of governmental conduct.

*Id*. at 501. Because the City had invaded the legislature's exclusive authority to regulate riverbeds, the Supreme Court concluded that the legislators had legislative standing to challenge the City's action.[9]

More recently, our Supreme Court addressed legislative standing in *Markham v. Wolf*, 136 A.3d 134 (Pa. 2016). In that case, state legislators sought to intervene in a civil action challenging an executive order that authorized home healthcare workers to organize. The Supreme Court listed the requirements of legislative standing as follows:

> Standing exists only when a legislator's direct and substantial interest in his or her ability to participate in the voting process is negatively impacted, *see Wilt,* or when he or she has suffered a concrete impairment or deprivation of an official power or authority to act as a legislator, *see Fumo* (finding standing due to alleged usurpation of legislators' authority to vote on licensing).

*Id.* at 145. Conversely, a legislator lacks standing

> where he or she has an indirect and less substantial interest in conduct outside the legislative forum which is unrelated to the voting or approval process, and akin to a general grievance about the correctness of governmental conduct, resulting in the standing requirement being unsatisfied.

---

[9] The legislators did not have standing to challenge the manner in which the license was issued because that claim did not "demonstrate any interference with or diminution in the state legislators' authority as members of the General Assembly[.]" *Fumo*, 972 A.2d at 502.

12

*Id*. The Supreme Court concluded that the legislators did not demonstrate that the executive order impacted their "ability to propose, vote on or enact legislation." *Id.* Indeed, they were free to enact legislation that would overrule the executive order. In short, the legislators lacked the legally cognizable interest required for intervention.

Proposed Intervenors assert that *Markham* is distinguishable and did not hold that legislators had to meet the standards of *William Penn Parking,* 346 A.2d 269, merely to intervene in existing litigation. Rather, they argue that the standards for intervention are governed by the rules of procedure that govern a tribunal's proceedings. In *Sunoco Pipeline,* 217 A.3d at 1288, this Court acknowledged this point. We noted that the standard for intervention in a proceeding before the Public Utility Commission is easily satisfied. *See* 52 Pa. Code §5.72(a)(3) (Public Utility Commission regulation permitting intervention where it "may be in the public interest"). Thus, it does not follow that because a legislator was permitted to intervene in a Commission proceeding that he has standing to initiate a proceeding before the Commission. Simply, the test for standing to initiate litigation is not co-terminus with the test for intervention in existing litigation.

Nevertheless, the principles of legislative standing are relevant to a determination of whether a putative intervenor has demonstrated a "legally enforceable interest" for purposes of Rule No. 2327(4). Here, Proposed Intervenors argue that the outcome sought by Reproductive Health Centers could narrow their ability to exercise "legislative power," particularly in the matter of appropriation. Under Article III, Section 24 of the Pennsylvania Constitution, state government cannot expend funds "except on appropriations made by law" by the General

13

Assembly. PA. CONST. art. III, §24.[10] The ruling sought by Reproductive Health Centers will directly limit the General Assembly's exclusive authority to appropriate moneys from the treasury, a principle long recognized by our Supreme Court. Accordingly, in *Shapp v. Sloan,* 391 A.2d 595 (Pa. 1978), the Supreme Court held that executive branch agencies cannot spend moneys obtained by federal grants unless and until those funds are appropriated by the legislature. Proposed Intervenors argue that because the instant litigation "may affect" their power to appropriate funds, they are entitled to intervene under Rule No. 2327(4).

Reproductive Health Centers deny that they seek to expand the restrictions on legislative power set forth in Article III, noting that this petition for review only cites Article III, Section 32 because it is part of the construct of equal protection in the Pennsylvania Constitution. They also argue that legislators have no interest in the enforcement of the Abortion Control Act and, in support, invoke *Robinson Township v. Commonwealth*, 84 A.3d 1054, 1055 (Pa. 2014). In that case, legislators were denied intervention in a constitutional challenge to "Act 13" of the Oil and Gas Act.[11] The legislators wanted to offer "their perspective on the correctness of governmental conduct, *i.e.,* that the General Assembly did not violate the substantive and procedural strictures of the Pennsylvania Constitution in enacting Act 13." *Id.* at 1055. The Supreme Court rejected this proffer because it

---

[10] Article III, Section 24 states:

> No money shall be paid out of the treasury, except on appropriations made by law and on warrant issued by the proper officers; but cash refunds of taxes, licenses, fees and other charges paid or collected, but not legally due, may be paid, as provided by law, without appropriation from the fund into which they were paid on warrant of the proper officer.

PA. CONST. art. III, §24.

[11] Act 13 is codified at 58 Pa. C.S. §§2301-3504.

did not relate to a "defense of the potency of their right to vote," and legislators do not have the right to offer "their perspective on the correctness of their conduct." *Id.*

What distinguishes this case from *Markham* or *Robinson Township* is that the instant litigation relates directly to the legislative power to appropriate. To be sure, this Court dismissed this argument as "tenuous at best" in *Allegheny I. See Allehgheny I,* slip op. at 16. Proposed Intervenors challenge this dismissive statement as conclusory and unfounded. They argue that the object of this litigation is to change the substance and manner by which the General Assembly can appropriate funds in the future for the Medical Assistance program. We agree.

Article III of the Pennsylvania Constitution is entirely dedicated to the subject of "legislation." It imposes standards for the form and consideration of bills and their passage and contains numerous provisions that relate directly to appropriations. *See*, *e.g.*, Article III, Section 3 (Form of Bills), Section 11 (Appropriation Bills),[12] and Section 24 (Paying Out Public Moneys). PA. CONST. art. III, §§3, 11, 24. A general appropriation act often contains language that is conditional or incidental to the subject of appropriation. *See, e.g.*, *Commonwealth ex rel. Greene v. Gregg*, 29 A. 297, 298 (Pa. 1894) (holding that designating funds for Supreme Court prothonotary was permissible incidental language in a general appropriation act). Opinions of the Pennsylvania Attorney General have repeatedly approved the use of incidental language in a general appropriations act. *See, e.g.*, Op. Atty. Gen. No. 59 (1958), and Op. Atty. Gen. No. 12 (1957). Indeed, the use of

---

[12] It states:

> The general appropriation bill shall embrace nothing but appropriations for the executive, legislative and judicial departments of the Commonwealth, for the public debt and for public schools. All other appropriations shall be made on separate bills, each embracing but one subject.

PA. CONST. art. III, §11.

15

conditional language in a general appropriation act enjoys wide currency in many states. As the Michigan Supreme Court has explained,

> The tieing of legislative strings to appropriation of state funds for governmental purposes has never been considered as adding a second object to an appropriation law[.]

*Lewis v. State*, 90 N.W.2d 856, 860 (Mich. 1958) (quoting an opinion of the Michigan Attorney General).

The Abortion Control Act is part of the Crimes Code. If Reproductive Health Centers are successful in their litigation, the challenged provisions will be rendered null and void. However, the constitutional principle Reproductive Health Centers seek to establish will extend beyond the statute and the Department's regulations. It could bar the General Assembly from "tieing legislative strings" to its appropriation of funds for the Medical Assistance program. Reproductive Health Centers freely acknowledge this point. They believe that if they succeed in this litigation, the general appropriation act could not, for example, condition funding of Medical Assistance to coverage of only those reproductive health services that will ensure a full-term pregnancy. Similarly, the general appropriation act could not tie Medical Assistance funding for abortion services to the availability of federal funds.[13]

Reproductive Health Centers seek to restrict the substance and form of appropriation bills. They seek to eliminate the ability of legislators to add conditional or incidental language to a general appropriation act insofar as it relates

---

[13] In *Fischer*, 502 A.2d at 119, our Supreme Court discussed the Hyde Amendment, which limits federal funding of abortion to life-threatening situations, and observed that in *Harris v. McRae*, 448 U.S. 297 (1980), the federal limit had been held not to contravene the right of indigent women to abortion in other circumstances.

16

to providing coverage of reproductive health services for indigent woman enrolled in Medical Assistance. Likewise, they seek to expand the prohibition against special laws in Article III, Section 32 to eliminate the General Assembly's power to decide the circumstances under which abortion services will be funded by the treasury.

Proposed Intervenors seek to do more than offer "their perspective on the correctness of their conduct." *Robinson Township*, 84 A.3d at 1055. Article III is peculiar to the legislative branch of state government, imposing both strictures and responsibilities. Proposed Intervenors seek to preserve their voting power as it currently exists under Article III and their authority to appropriate Commonwealth funds, a key legislative duty. As our Supreme Court has explained, the "General Assembly enacts the legislation establishing those programs which the state provides for its citizens and appropriates the funds necessary for their operation. The executive branch implements the legislation by administering the programs." *Shapp*, 391 A.2d at 604. In doing so, the executive branch must abide by "the requirements and restrictions of the relevant legislation, and within the amount appropriated by the legislature." *Id. See also Jubelirer v. Rendell*, 953 A.2d 514, 529 (Pa. 2008).

Proposed Intervenors seek to preserve their authority to propose and vote on funding legislation in the future. The constitutional authority of the members of the General Assembly to control the Commonwealth's finances constitutes a legally enforceable interest that entitles them to intervene and be heard before the Court rules in this matter.

We conclude that Proposed Intervenors have established grounds to intervene pursuant to Rule No. 2327(4) and so hold.

17

**II.**

Rule No. 2329 prohibits intervention if the interest of the proposed intervenor is already adequately represented or intervention will cause undue delay or prejudice. PA. R.C.P. No. 2329(2) and (3).[14] Proposed Intervenors claim that their interest is not shared with the Department. In fact, in *Allegheny I*, this Court acknowledged that Proposed Intervenors' interest may not be adequately represented by the Department "given the vastly different responsibilities and powers of the executive and legislative branches of government as they relate to the coverage ban." *Allegheny* I, slip op. at 17. Nor has prejudice been shown. As noted by Proposed Senate Intervenors, "although there are multiple Proposed Intervenors, they speak herein with one, unified voice – a voice that represents an entirely different set of long-term interests and goals from [the Department]." Proposed Senate Intervenors' Brief at 17. The Department has no legally enforceable interest in matters relating to Commonwealth appropriations. An executive branch agency is simply not in a position to represent Proposed Intervenors' interest in the exercise of legislative power under Article III of the Pennsylvania Constitution.

Reproductive Health Centers counter that even if intervention was appropriate under Rule No. 2327, this Court should deny intervention because Proposed Intervenors will unduly delay, embarrass or prejudice the case in contravention of Rule No. 2329(3). They contend that the sheer number of Proposed Intervenors will unnecessarily complicate the matter. However, Reproductive Health Centers cite neither precedent nor evidence to support their contention that

---

[14] Rule No. 2329(l) applies to cases where "the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action[.]" PA. R.C.P. No. 2329(1). This subsection is not at issue in this case.

legislator intervention has ever unduly complicated the orderly process of a judicial proceeding.

As held in *Allegheny I*, Proposed Intervenors' interest in the case will not be represented by the Department. This holding is unassailable under *Shapp v Sloan,* 391 A.2d at 604. Reproductive Health Centers' contention that Proposed Intervenors will cause prejudice or delay relies upon no more than speculation and, thus, is rejected as unfounded.

**Conclusion**

For all the above reasons, we conclude that Proposed Intervenors have established grounds to intervene pursuant to Rule No. 2327(4) and have established that none of the grounds for refusal set forth in Rule No. 2329 are applicable.[15] Accordingly, we grant Proposed Intervenors' applications for leave to intervene.

_____
MARY HANNAH LEAVITT, President Judge

Judge Fizzano Cannon did not participate in the decision in this case.

---

[15] Because we grant intervention pursuant to Rule No. 2327(4), we need not decide whether Proposed Intervenors are also entitled to intervention under Rule No. 2327(3).

19

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Allegheny Reproductive Health Center, Allentown Women's Center, Berger & Benjamin LLP, Delaware County Women's Center, Philadelphia Women's Center, Planned Parenthood Keystone, Planned Parenthood Southeastern Pennsylvania, and Planned Parenthood of Western Pennsylvania, Petitioners | : : : : : : : : : : | |
| v. | : | No. 26 M.D. 2019 |
| | : | |
| Pennsylvania Department of Human Services, Teresa Miller, in her official capacity as Secretary of the Pennsylvania Department of Human Services, Leesa Allen, in her official capacity as Executive Deputy Secretary for the Pennsylvania Department of Human Service's Office of Medical Assistance Programs, and Sally Kozak, in her official capacity as Deputy Secretary for the Pennsylvania Department of Human Service's Office of Medical Assistance Programs, Respondents | : : : : : : : : : : : : : : | |

**O R D E R**

AND NOW, this 28th day of January, 2020, the applications for leave to intervene filed by members of the Pennsylvania State Senate and by members of the Pennsylvania House of Representatives are hereby GRANTED.

Pursuant to this Court's order of July 31, 2019 (granting a stay pending disposition of the applications for leave to intervene), Respondents shall file a brief in support of their preliminary objections within 30 days of this order.

_____
MARY HANNAH LEAVITT, President Judge