Al FLORA, Jr., and Adam Kuren and Steven Allabaugh, on behalf of themselves and all others similarly situated, Appellants

v.

LUZERNE COUNTY OF THE COMMONWEALTH OF PENNSYLVANIA and Robert C. Lawton, County Manager, in his official capacity.

Al Flora, Jr., and Adam Kuren and Steven Allabaugh, on behalf of themselves and all others similarly situated

v.

Luzerne County of the Commonwealth of Pennsylvania and Robert C. Lawton, County Manager, in his official capacity, Appellants.

Commonwealth Court of Pennsylvania.

Argued June 16, 2014.

Decided Oct. 14, 2014.

Reargument Denied Dec. 2, 2014.

Mary C. Roper and John S. Summers, Philadelphia, for appellants.

John G. Dean, Wilkes–Barre, and James C. Crumlish, III, Blue Bell, for appellees.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, ROBERT SIMPSON, Judge, MARY HANNAH LEAVITT, Judge.

OPINION BY Judge MARY HANNAH LEAVITT.

Al Flora, Jr., Adam Kuren, and Steven Allabaugh appeal the order of the Luzerne County Court of Common Pleas (trial court) granting the preliminary objections of Luzerne County and County Manager Robert C. Lawton (collectively County) to their amended complaint. The amended complaint asserts that, due to inadequate funding, the Office of Public Defender of Luzerne County is unable to represent indigent clients adequately, thereby depriving those clients of their right to counsel guaranteed by the Sixth Amendment. The trial court sustained the County's objections that the plaintiffs lacked standing, for separate reasons, and that the complaint failed to state a cause of action. The trial court overruled the County's objection that the plaintiffs should have joined the current Chief Public Defender as an indispensable party. The County cross-appeals the trial court's denial of its motion to disqualify an attorney representing the plaintiffs on the basis of her alleged ethics violations.

## Background

On April 10, 2012, Al Flora, Jr., in his official capacity as acting Chief Public Defender of Luzerne County, and three indigent criminal defendants filed a class action complaint against the County for depriving the three indigent criminal defendants of their right to counsel under the Sixth Amendment of the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution. The complaint was amended on May 15, 2013, *inter alia,* to aver that Flora was suing in his individual capacity because he was no longer employed by the County as Chief Public Defender. It also replaced the original indigent criminal defendant plaintiffs with Joshua Lozano,[1] Kuren and Allabaugh (Indigent Clients) as representatives of a class comprised of "all indigent adults in Luzerne County who are or will be represented by the Office of the Public Defender from this point until the Office of the Public Defender has the funding and resources necessary to enable it to meet ethical, legal, and constitutional standards of representation." Amended Complaint, ¶ 4; Reproduced Record at 851a–52a (R.R. ——).

The amended complaint asserted that the Office of Public Defender, as currently funded, cannot provide adequate legal representation to indigent criminal defendants. The amended complaint generally alleged that public defenders carry caseloads that exceed the standard recommended by the American Bar Association; lack basic office resources such as individual desks and phone lines; and lack sufficient support staff. More specifically, the amended complaint alleged that public defenders are unable to provide representation at most preliminary arraignments and

often must request continuances of critical proceedings, leading to longer incarcerations than might be otherwise necessary. Amended Complaint, ¶¶ 48–49, 53–54; R.R. 865a–67a. It further alleged that public defenders in Luzerne County are unable to prepare properly for their clients' defense or to consult with them in confidence. Amended Complaint, ¶¶ 61–70; R.R. 869–872. The amended complaint requested the following relief:

> [a] writ of mandamus and permanent injunction compelling [the County] to provide necessary funding to allow the [Office of Public Defender] to hire additional trial attorneys and support staff as well as upgrade the physical and technological resources such that the [Office of Public Defender] is capable of providing representation to all qualified indigent defendants prosecuted in Luzerne County that satisfies standards set by the U.S. and Pennsylvania Constitutions.

Amended Complaint, Prayer for Relief ¶ 1; R.R. 885a. Notably, the amended complaint alleged that Flora had attempted numerous times to obtain additional resources from the County through the normal budgetary process. Amended Complaint, ¶¶ 29–37; R.R. 858a–61a. However, his requests were denied. In response, Flora adopted a policy in December 2011 that limited the clients of the Office of Public Defender to those defendants charged with homicide or felony sex offenses or who are facing extradition. Amended Complaint, ¶ 33; R.R. 860a.

With their complaint, the plaintiffs filed a request for preliminary injunction, and this was granted on June 15, 2012, after a hearing. The trial court ordered the

1. Joshua Lozano was named in the amended complaint as a potential class representative but he is not a party to this appeal.

County to provide funding for unfilled vacancies within the Office of Public Defender and to provide office space adequate to allow confidential communication between public defenders and their clients. Additionally, the trial court ordered the County to appoint a lawyer to represent each of the original indigent criminal defendant plaintiffs, who had been deprived counsel under Flora's December 2011 policy, and ordered Flora to discontinue that policy. Finally, the trial court ordered the parties into mediation, which proved unsuccessful.

On April 17, 2013, the County dismissed Flora and appointed a new Chief Public Defender.[2] On May 31, 2013, the County removed the amended complaint to the United States District Court for the Middle District of Pennsylvania, but the case was remanded to the trial court on August 16, 2013.

On September 11, 2013, the County filed preliminary objections to the amended complaint and a motion to disqualify one of the Indigent Clients' attorneys, Mary Catherine Roper, Esq. The trial court held a hearing on October 8, 2013, on both issues. Regarding the motion to disqualify, the parties stipulated to several facts, specifically that Roper: (1) met with the Indigent Clients individually in April 2013 knowing that some of them were represented by public defenders in their criminal cases, (2) did not inform the public

defenders that she was meeting with their clients and (3) brought retainer or fee agreements to the meetings that were executed afterwards.

On October 21, 2013, the trial court denied the County's motion to disqualify Roper. On October 22, 2013, the trial court sustained several of the County's preliminary objections and dismissed the amended complaint. Specifically, the trial court held that both Flora and the Indigent Clients lacked standing and that the amended complaint failed to state a cause of action. The trial court also held that the current Chief Public Defender is not an indispensable party. Flora and the Indigent Clients have appealed the order sustaining the County's preliminary objections, and the County has cross-appealed the denial of its motion to disqualify Roper.

■ On appeal,[3] Flora and the Indigent Clients raise two issues. First, they contend that the trial court erred in holding that Flora lacked standing in his individual capacity. Second, they argue that the Indigent Clients have standing to allege a deprivation of their Sixth Amendment right to counsel before a deprivation has actually occurred. On cross-appeal,[4] the County argues that Attorney Roper violated several rules of professional conduct

---

**2.** Flora filed an action in federal court alleging retaliation claims under state and federal law and seeking reinstatement as Chief Public Defender. The action was dismissed. Flora is appealing the dismissal of the federal claim and will refile his state law claims in the trial court.

**3.** In reviewing a trial court's grant of preliminary objections, this Court's standard of review is *de novo* and the scope of review is plenary. *Mazur v. Trinity Area School District*, 599 Pa. 232, 961 A.2d 96, 101 (2008). The court must accept as true all well-pleaded, material, and relevant facts alleged in the

complaint and every inference that is fairly deducible from those facts. *Id.* Preliminary objections should be sustained only when, based on the facts pleaded, it is clear and free from doubt that the complainant will be unable to prove facts legally sufficient to establish a right to relief. *Id.*

**4.** This Court exercises plenary review of a trial court's disposition of an attorney disqualification motion. *Vertical Resources, Inc. v. Bramlett*, 837 A.2d 1193, 1201 (Pa.Super.2003).

and that the trial court erred in refusing to disqualify her.

### Flora's Standing

We consider, first, whether Flora has standing to pursue his claim that the Office of Public Defender is inadequately funded. The plaintiffs contend that Flora has standing under the traditional standing test and also as a taxpayer under *Application of Biester*, 487 Pa. 438, 409 A.2d 848 (1979).

To have standing, a party must establish "that he has a substantial, direct, and immediate interest in the outcome of the litigation." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 585 Pa. 196, 888 A.2d 655, 660 (2005). An interest is "substantial" if the party's interest "surpasses the common interest of all citizens in procuring obedience to the law." *Id.* A "direct" interest requires a showing of a causal connection between the matter complained of and the party's interest. *Id.* Finally, an "immediate" interest requires the causal connection to not be remote or speculative. *Id.* The key is that the person must be "negatively impacted in some real and direct fashion." *Id.*

The plaintiffs argue that Flora is "aggrieved" under the traditional standing test because "his right to bring a mandamus suit was deliberately frustrated by a discharge he contends is retaliatory." Plaintiffs' Brief at 55. Therefore, they argue that Flora should be permitted to continue as a plaintiff unless and until the federal court rules on his retaliation claims. They also contend that the trial court erred in relying upon *Bradford Timbers v. H. Gordon Roberts*, 654 A.2d 625 (Pa.Cmwlth.1995). Plaintiffs argue that *Ambron v. Philadelphia Civil Service Commission*, 73 Pa.Cmwlth. 628, 458 A.2d 1055 (1983), is a more applicable precedent because it dealt with the standing of a plaintiff challenging his removal, as is the case with Flora.

In *Bradford Timbers*, a district justice petitioned for a writ of mandamus to compel the county to make a clerical appointment to his personal staff. After the district justice filed his petition, our Supreme Court suspended him. This Court held that the district justice lacked standing to proceed with his mandamus action because he no longer had the authority to carry out the act he sought to compel. *Bradford Timbers*, 654 A.2d at 626. In *Ambron*, four police detectives challenged their transfer from the district attorney's office to the Philadelphia police department. After three of the four officers resigned, the complaint was challenged as moot. This Court held that because the plaintiffs were "not incapable of reinstatement," their claims were not moot. *Ambron*, 458 A.2d at 1056.

As the trial court noted, Flora was once Chief Public Defender and may succeed in challenging his termination as retaliatory. However, he *currently* has no right to manage the Office of Public Defender in any way whatsoever. In *Bradford Timbers*, this Court held that the suspended district justice lacked standing even though his removal was temporary. The case is stronger, here, because Flora's removal from office is permanent. *Ambron* is distinguishable because Flora's potential reinstatement is not an issue in the present litigation. We therefore agree with the trial court's reliance on *Bradford Timbers*.

We conclude that Flora lacks traditional standing because he is not personally aggrieved by the County's alleged failure to fund the Office of Public Defender adequately. He is not directly impacted by the County's actions any more than other

individual citizens. As a result, his interest is not substantial, direct, or immediate.

 Alternatively, the plaintiffs argue that Flora has taxpayer standing under *Biester*, which created an exception to the traditional standing requirements. Under this exception, a taxpayer, even one not personally aggrieved, may challenge a governmental action provided he satisfies the following requirements: (1) the governmental action would otherwise go unchallenged, (2) those directly and immediately affected by the complained of expenditures are beneficially affected and not inclined to challenge the action, (3) judicial relief is appropriate, (4) redress through other channels is unavailable, and (5) no other persons are better situated to assert the claim. *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323, 329 (1986), *abrogated on other grounds by Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 877 A.2d 383 (2005). All the conditions must be satisfied for a taxpayer to have standing.

The plaintiffs argue that Flora satisfies the first *Biester* requirement because the County could dismiss any Chief Public Defender who attempts to address the alleged funding deficiencies to the Office. Second, they argue that the public defenders and their clients will be benefited by the lawsuit, and they are either unable or unlikely to bring litigation due to the County's past firing of Flora. Third, the plaintiffs contend that judicial relief is particularly appropriate in the present case because it involves constitutional questions. Fourth, they argue that relief through other channels is unavailable because, again, the County can stop the Chief Public Defender from filing a lawsuit

by firing him. They also note that Flora spent two years lobbying the County for additional resources before filing the current lawsuit. Finally, the plaintiffs contend that a decision by the Chief Public Defender to bring a lawsuit similar to the present one would be "futile" because the County would fire him to prevent the lawsuit from going forward. In any case, because the current Chief Public Defender has not acted, Flora should be permitted to proceed with this action to fulfill the intent of *Biester*.

The County responds that Flora lacks standing under *Biester* because relief is available through other channels. The current Chief Public Defender may bring a claim under the Public Defender Act [5] or seek to have attorneys appointed on a case-by-case basis. Individual indigent criminal defendants may obtain relief under the Post Conviction Relief Act [6] should they receive ineffective assistance of counsel in their criminal trials.

The trial court did not err in holding that Flora lacks standing under *Biester*. First, whether the County has provided the Indigent Clients effective assistance of counsel will be addressed in their criminal cases. Likewise, the current Chief Public Defender may challenge the County's actions. *See, e.g., Dauphin County Public Defender's Office v. Court of Common Pleas of Dauphin County*, 578 Pa. 59, 849 A.2d 1145, 1148 (2004) (holding that public defender has standing to challenge administrative order which affects statutory obligation "to provide legal representation to financially eligible criminal defendants"). Redress is also available through the regular budgetary process. The plaintiffs' primary argument is that the County will dismiss a Chief Public Defender who files

---

**5.** Act of December 2, 1968, P.L. 1144, *as amended,* 16 P.S. §§ 9960.1–9960.13.

**6.** 42 Pa.C.S. §§ 9541–9546.

a lawsuit, but this is speculation. Notably, if Flora is successful in his retaliation claim against the County and is reinstated, he can then bring a lawsuit in his official capacity.

In sum, we hold that Flora lacks standing in his individual capacity and the trial court properly sustained the County's preliminary objection on this ground.

### Indigent Clients' Standing/Failure to State a Claim

Next, we consider whether the trial court erred in finding that the Indigent Clients lacked standing. They argue that they adequately pled a constructive denial of counsel claim in the amended complaint, which alleges that the County's public defenders are unable to: interview or meet with clients prior to preliminary hearings; contact clients between court appearances; conduct meaningful investigation or discovery; engage in motion practice; gather the information needed to do effective plea negotiations; engage in sufficient trial preparation; or properly litigate appeals due to lack of experience. Amended Complaint, ¶ 106, R.R. 881a. Because they have been constructively denied counsel, the Indigent Clients believe they have a substantial, direct, and immediate interest in the resources provided to the Office of Public Defender. They explain that their action does not seek to alter how the Chief Public Defender allocates the resources available to him, but rather to compel the County to provide sufficient resources to satisfy its statutory and constitutional obligations. Additionally, the Indigent Clients contend that the amended complaint raises an actual denial of counsel claim because the Office of Public Defender does not provide representation at preliminary arraignments, the point in the criminal process where the right to counsel attaches.

The County counters that none of the Indigent Clients have yet been convicted and, therefore, have not suffered any prejudice. In addition, the County argues that mandamus relief is not available because the Indigent Clients seek to compel the appropriation of additional funds for the Office of Public Defender, which is a discretionary act. Finally, the County contends that the amended complaint's allegations that its public defenders will not devote sufficient time to their representation do not give rise to a claim for either an actual denial or constructive denial of counsel.

The argument on standing merges with the question of whether the amended complaint states a claim upon which relief can be granted. Accordingly, we decide the two issues together.

### Right to Counsel

■ The Sixth Amendment of the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The United States Supreme Court has held that states must provide indigent criminal defendants with appointed counsel. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The right to counsel attaches once the criminal defendant is actually charged at a preliminary arraignment. *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009). Therefore, an indigent criminal defendant who does not receive appointed counsel may bring an actual denial of counsel claim. *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

■ Appointed counsel must provide effective representation. If an indigent criminal defendant's appointed lawyer is ineffective, the defendant is entitled to a

new trial. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* a defendant must prove that his attorney performed below a standard of objective reasonableness and that counsel's performance resulted in actual prejudice to the defendant. *Id.* An ineffective assistance of counsel claim may be brought only after the defendant has been convicted. *See id.*

In *Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657, decided the same day as *Strickland,* the Supreme Court noted that there are some cases where

> the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.

*Cronic,* 466 U.S. at 659–60, 104 S.Ct. 2039. In *Cronic,* the defendant's retained counsel withdrew weeks before the case went to trial. His newly appointed counsel was a young lawyer with a real estate practice who had 25 days to prepare for the complex fraud case that had taken the government over four years to prepare. Nevertheless, the Supreme Court held that these facts were not sufficient to establish a presumption of prejudice. Instead, the Court cited *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), as an example of where a presumption of prejudice will be shown. In *Powell,* the defendant's counsel was from out-of-state and did not know the local rules of court or even the facts of the case. In these circumstances, the Supreme Court held that it can be presumed that the criminal defendant is prejudiced and, effectively, has been denied counsel.

Notably, both *Strickland* and *Cronic* were criminal appeals where the defendants were seeking to overturn their convictions; they did not seek prospective relief.

### Constructive Denial of Counsel

The Indigent Clients ask this Court to recognize a new civil remedy to improve funding to a public defender's office. In *Luckey v. Harris,* 860 F.2d 1012 (11th Cir.1988), the first case to recognize such a remedy, a class of indigent criminal defendants in Georgia sought to require state government to provide the funding for their defense. After the dismissal of the case, the Eleventh Circuit Court of Appeals reversed, reasoning that a criminal defendant's "lack of counsel" claims might not rise to the level of "ineffective assistance" but the defendants could still suffer harm. Nevertheless, the court held that criminal defendants asserting that they will suffer from a lack of meaningful representation in the future must show a likelihood of substantial and immediate irreparable injury and the inadequacy of a remedy at law to proceed. *Luckey* was never litigated to completion because it was dismissed on grounds of abstention. *Luckey v. Miller,* 976 F.2d 673 (11th Cir. 1992).

The New York Court of Appeals considered a constructive denial of counsel claim in *Hurrell–Harring v. New York,* 15 N.Y.3d 8, 904 N.Y.S.2d 296, 930 N.E.2d 217 (2010). There, several indigent criminal defendants brought a civil action asserting that they had been constructively denied their constitutional right to counsel because of the inadequate funding of several county public defender's offices. In a 4 to 3 decision, the New York Court of Appeals allowed the case to proceed and reversed the lower court's dismissal. The court reasoned that *Strickland's* holding that a defendant must be convicted before he brings an ineffective assistance of counsel claim was premised on the supposition that *Gideon* was being faithfully applied by

the states. The question decided in *Strickland* was "not [ ] whether ineffectiveness has assumed systemic dimensions, but rather [ ] whether the State has met its foundational obligation under *Gideon* to provide legal representation." *Id.* 904 N.Y.S.2d 296, 930 N.E.2d at 222. The New York Court of Appeals noted that the complaint alleged that appointed counsel served in name only because they were chronically unavailable, unresponsive to urgent inquiries, waived important rights without consulting their clients, missed court appearances, and appeared in court unprepared to proceed. *Id.* These allegations, the New York court held, "raise serious questions as to whether any [attorney-client] relationship may be really said to have existed." *Id.* 904 N.Y.S.2d 296, 930 N.E.2d at 224. Thus, the court distinguished *Strickland.* The New York Court of Appeals allowed the case to proceed, but it has not been litigated to judgment.

Similarly, in *Duncan v. Michigan,* 284 Mich.App. 246, 774 N.W.2d 89 (2009), *aff'd on other grounds* 486 Mich. 906, 780 N.W.2d 843 (2010),[7] a class of indigent criminal defendants challenged the funding to several county public defender offices as so inadequate as to violate the Sixth Amendment. Specifically, the plaintiffs alleged that the county systems were "wholly lacking" regarding client eligibility standards; attorney hiring, training and retention programs; written performance and workload standards; monitoring and supervision of appointed counsel; conflict of interest guidelines; and independence from the judiciary and prosecutorial offices. *Id.* at 99. The Michigan Court of Appeals noted that the allegations in the complaint were detailed on specific instances of inadequate representation, limited interaction between the public defenders and their clients and waivers of client rights by counsel.

In a 2 to 1 decision, the Michigan Court of Appeals explained, first, that mandamus was available to compel governmental action because the plaintiffs were not seeking to compel an appropriation but, rather, to compel the state to provide adequate representation. The court acknowledged that funding and legislation "would seemingly appear to be the measures needed to be taken to correct constitutional violations," but stated that "we are not prepared to rule on the issue whether the trial court has the authority to order appropriations, legislation, or comparable steps." *Id.* at 111. The court allowed the case to proceed to allow plaintiffs the opportunity to show the

> existence of widespread and systemic instances of actual or constructive denial of counsel and instances of deficient performance by counsel, which instances may have varied and relevant levels of egregiousness, all causally connected to defendants' conduct.

*Id.* at 124. The court rejected the argument that post-conviction relief, as set forth in *Strickland,* provided the exclusive and proper remedy. The case has not been litigated to judgment.

---

7. The appellate history of *Duncan* is complex. Initially, the Michigan Supreme Court on April 30, 2010, vacated and remanded in part and affirmed in part the Court of Appeals' decision. Regarding the constructive denial of counsel issue, the Supreme Court stated that "[t]his case is at its earliest stages and, based solely on the plaintiffs' pleadings in this case, it is premature to make a decision on the substantive issues." *Duncan,* 486 Mich. 906, 780 N.W.2d 843, 844 (2010). Therefore, the Court held that summary disposition was inappropriate. The Court subsequently granted and vacated several reconsideration orders. Ultimately, the court reinstated its original April 30th order. *Duncan,* 488 Mich. 957, 790 N.W.2d 695 (Mich.2010) ("[W]e REINSTATE our order in this case dated April 30, 2010, because reconsideration thereof was improperly granted.").

The dissents in *Hurrell–Harring* and *Duncan* are also worthy of review. The dissenting judge in *Hurrell–Harring* reasoned that inadequacies in the public defender system do not constitute a Sixth Amendment claim. The dissent noted that "[c]onstructive denial of counsel is a branch from the *Strickland* tree, with *Cronic* applying only when the appointed attorney's representation is so egregious that it's as if [the] defendant had no attorney at all." *Hurrell–Harring*, 904 N.Y.S.2d 296, 930 N.E.2d at 229 (Pigott, J., dissenting). The dissent concluded that "[p]laintiffs' mere lumping together of 20 generic ineffective assistance of counsel claims into one civil pleading does not ipso facto transform it into one alleging a systemic denial of the right to counsel." *Id.* 904 N.Y.S.2d 296, 930 N.E.2d at 230 (Pigott, J., dissenting).

In *Duncan*, the dissenting judge concluded that the relief sought by the plaintiffs would violate separation of powers because they

> sought in their complaint to have the judiciary override the Michigan system of local control and funding of legal services for indigent criminal defendants.

*Duncan*, 774 N.W.2d at 153–54 (Whitbeck, J., dissenting). Because the plaintiffs had not yet been convicted, they had not suffered prejudice, which is necessary to pursue a Sixth Amendment claim. The plaintiffs' right to pursue an ineffective assistance of counsel claim post-conviction, under *Strickland,* provided an adequate remedy. This made mandamus or injunctive relief inappropriate. Finally, the dissent noted that the Sixth Amendment does not guarantee criminal defendants an attorney of a particular level of skill.

In the present case, the trial court explained that *Hurrell–Harring* was distinguishable because the New York court was "reviewing an alleged outright denial of legal counsel (not effective assistance)" at points in the criminal process where counsel was required. Trial Court op. at 11. By contrast, the amended complaint alleged that some indigent criminal defendants did not have counsel at their preliminary arraignment, which is a point in the criminal process *before* the right to counsel attaches. This made the claims of the Indigent Clients different from those of the plaintiffs in *Hurrell–Harring*. Accordingly, the real question raised by the amended complaint was not a denial of counsel but, rather, a denial of effective counsel. The trial court concluded that whether counsel was ineffective can only be determined after the criminal proceedings have ended.

We find persuasive and so accept the analyses of the dissenting judges in *Hurrell–Harring* and *Duncan* and reject as not persuasive the majority opinions in those cases. We do so for several reasons.

First, there is no precedent from the United States Supreme Court acknowledging that a constructive denial of counsel claim may be brought in a civil case that seeks prospective relief in the form of more funding and resources to an entire office, as opposed to relief to individual indigent criminal defendants. *Strickland, Cronic,* and *Gideon* were all cases where the defendants sought a new trial. As explained in the *Duncan* dissent, the "United States Supreme Court in *Gideon* and *Strickland* was concerned with results, not process. It did not presume to tell the states *how* to ensure that indigent criminal defendants receive effective assistance of counsel." *Duncan,* 774 N.W.2d at 153 (Whitbeck, J., dissenting). It is unclear that such a claim will be held cognizable in any state.

Second, even assuming, *arguendo,* that a Sixth Amendment claim for more

funding to the public defender's office is cognizable, the amended complaint does not satisfy the requisite standard. The amended complaint alleges that attorneys from the Office of Public Defender meet only briefly with indigent clients, rarely contact clients between court appearances, do not conduct significant investigation or discovery, do not engage in sufficient trial preparation, and cannot properly litigate appeals due to lack of experience. Amended Complaint, ¶ 106, R.R. 881a. These allegations do not create circumstances that are "so likely [to create prejudice] that case-by-case inquiry into prejudice is not worth the cost." *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. Notably, constructive denial of counsel was not found in *Cronic* where the lawyer assigned to the complex white collar criminal case was new to the profession, did real estate law and was appointed 25 days before the trial for which the government had prepared for four years.

The amended complaint does not allege facts to support the inference that the Indigent Clients have or will suffer irreparable harm, but only the fear that they will not be adequately represented. This is speculation, a deficiency in the pleading that cannot be cured by amendment. *Kennedy v. Carlson*, 544 N.W.2d 1, 6–8 (Minn.1996) (holding that public defender's claims were too speculative and hypothetical to pursue a denial of effective assistance of counsel). We agree with the *Hurrell–Harring* dissent that the "mere lumping together of 20 generic ineffective assistance of counsel claims into one civil pleading does not ipso facto transform it into one alleging a systemic denial of the right to counsel." *Hurrell–Harring*, 904 N.Y.S.2d 296, 930 N.E.2d at 230 (Pigott, J., dissenting).

■■■■ Third, as noted by the Supreme Court in *Strickland*, "[r]epresenta-tion is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052. Indeed, "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is *simply to ensure that criminal defendants receive a fair trial.*" *Id.* at 689, 104 S.Ct. 2052 (emphasis added). These observations compel our disposition of the instant appeal. Criminal defendants are guaranteed effective assistance of counsel so that they receive a fair trial; they are not guaranteed perfect counsel or a perfect trial. Accordingly, we will not infer a presumption of prejudice in the present case.

Should the legal representation assigned to the individual Indigent Clients prove ineffective and cause them prejudice, their recourse is to bring a post-conviction *Strickland* claim.

### Mandamus

■■■■ Mandamus is an extraordinary remedy used to compel the performance of a ministerial act or mandatory duty. *Chesapeake Appalachia, LLC v. Golden*, 35 A.3d 1277, 1280 n. 7 (Pa.Cmwlth.2012). Mandamus requires a showing that: (1) the petitioner has a clear legal right to relief, (2) the official owes the petitioner a duty, and (3) there are no other adequate remedies at law. *Wilson v. Pennsylvania Board of Probation & Parole*, 942 A.2d 270, 272 (Pa.Cmwlth.2008). The essence of an action in mandamus is that a specific actor has a nondiscretionary duty to perform a particular act. *Finn v. Rendell*, 990 A.2d 100, 106 (Pa.Cmwlth.2010). Similarly, because a mandatory injunction compels a defendant to perform an act, rather than to refrain from acting, courts will

grant a mandatory injunction only upon a very strong showing that the plaintiff has a clear right to relief. *Department of Public Welfare v. Portnoy*, 129 Pa.Cmwlth. 469, 566 A.2d 336 (1989).

 Here, the amended complaint does not present a clear right to relief. The Indigent Clients have an alternative remedy either through a claim under *Strickland* or the Post Conviction Relief Act. Similarly, the Chief Public Defender may seek relief under the Public Defender Act, which authorizes him to

> arrange for and make use of the services of attorneys at law admitted to practice before the Supreme and Superior Courts of this Commonwealth and the court of common pleas of the county or counties in which they may serve, when such attorneys volunteer to act as assistants, without compensation, to enable him to carry out the duties of his office.

16 P.S. § 9960.5.

The amended complaint seeks the appropriation of additional funding to the Office of Public Defender to hire additional lawyers and staff. The County counters that its funding of the Office of Public Defender is inherently discretionary and cannot be compelled by a writ of mandamus. We agree with the County.

 In addition, the writ of mandamus sought in the amended complaint may violate the doctrine of separation of powers. Our system of government is based on the concept that the legislative, executive and judicial branches of government are independent and co-equal with each other. *Commonwealth ex rel. Carroll v.* *Tate*, 442 Pa. 45, 274 A.2d 193, 196 (1971). Accordingly, no branch of government may exercise the function committed to another branch. *Wilson v. Philadelphia School Districts*, 328 Pa. 225, 195 A. 90, 93 (1937). Nevertheless, in rare circumstances one branch of government may prevent another branch from usurping the powers committed to the other branches. *Beckert v. Warren*, 497 Pa. 137, 439 A.2d 638, 642 (1981).

 The judicial power, for example, is vested exclusively in the courts, and the taxing and spending powers are vested in the legislature. *Id.* at 642–43. As a "check," however, the courts may "compel expenditures necessary to prevent the impairment of [the court's] exercise of the judicial power or of the proper administration of justice." *Id.* at 642. Therefore, in limited and exceptional circumstances, the courts may order an appropriation of funds when the legislature's funding makes it impossible for the judiciary to comply with its statutory and constitutional obligations. *Id.* at 643. Specifically, our Supreme Court has held that in such a case,

> [t]here must be a genuine threat to the administration of justice, that is, a nexus between the legislative act and the injury to the judiciary, not merely a theoretical encroachment by the legislature.

*Id.* Stated otherwise, the lack of an appropriation must, itself, be an unconstitutional omission. "Absent such circumstances, the courts are not empowered to review discretionary acts of the legislature." *Id.*[8]

---

8. Courts may compel additional funding if the appropriated amount is inadequate to comply with statutory or constitutional obligations. *See Kistler v. Carbon County*, 154 Pa.Super. 299, 35 A.2d 733, 735 (1944) (holding that county commissioners cannot "limit or avoid liabilities imposed upon the county by the Constitution or by statutes"). The "administration of justice" must be construed more broadly than involving just the courts. Related entities, such as the Office of Public Defender, also participate in the administration of justice.

The amended complaint did not allege facts to show such an extreme refusal of the County to appropriate funds. The Indigent Clients' right to relief is far from clear. The County has provided indigent criminal defendants with counsel. Simply stated, the appropriation of additional funds to the Office of Public Defender is a discretionary act that cannot be compelled by a writ of mandamus.

### Actual Denial of Counsel

■ We next consider whether the amended complaint has pled an actual denial of counsel claim. Paragraph 53 of the amended complaint states:

[t]he [Office of Public Defender] is unable to provide representation or support at most preliminary arraignments, which the U.S. Supreme Court recently reaffirmed to be the point at which the right to counsel attaches. *See Rothgery v. Gillespie County*, 554 U.S. 191, 213 [128 S.Ct. 2578, 171 L.Ed.2d 366] (2008) ("[A] criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel.") The right to counsel under the Pennsylvania Constitution attaches at the same time as the right to counsel provided by the Sixth and Fourteenth Amendments to the U.S. Constitution. *Commonwealth v. Arroyo* [555 Pa. 125], 723 A.2d 162, 170 (Pa.1999).

9. They state:
(C) At the preliminary arraignment, a copy of the complaint accepted for filing pursuant to Rule 508 shall be given to the defendant.
(D) If the defendant was arrested with a warrant, the issuing authority shall provide the defendant with copies of the warrant

Amended Complaint, ¶ 53; R.R. 866a. The plaintiffs argue that this allegation raises an actual denial of counsel claim.

The United States Supreme Court has established that the right to counsel attaches at the preliminary arraignment, which is the point that the defendant enters the criminal prosecutorial system. *Montejo*, 556 U.S. at 786, 129 S.Ct. 2079. Under Pennsylvania Rule of Criminal Procedure 540, several events occur at a preliminary arraignment. The criminal defendant is presented with a copy of the criminal complaint and, if the defendant was arrested pursuant to a warrant, a copy of the warrant and supporting affidavits. PA. R.CRIM.P. 540(C), (D).[9] The defendant is read the complaint and informed of his right to counsel, including the right to have counsel assigned; the right to a preliminary hearing; and the type and conditions of release on bail, if applicable. PA. R.CRIM.P. 540(F). The defendant is not questioned about the charges. *Id.* Finally, a date for the preliminary hearing is determined, unless the right to the preliminary hearing is waived by a defendant represented by counsel. PA. R.CRIM.P. 540(G). After the preliminary arraignment, the defendant is given the opportunity to post bail, secure counsel, and notify others of the arrest. PA. R.CRIM.P. 540(H).

■ The right to counsel *attaches* at the preliminary arraignment, but the defendant does not have a right to counsel to represent him *at* the preliminary arraignment. In *Rothgery*, the case cited in the amended complaint, the United States Supreme Court held that

and supporting affidavit(s) at the preliminary arraignment, unless the warrant and affidavit(s) are not available at that time, in which event the defendant shall be given copies no later than the first business day after the preliminary arraignment.
PA. R.CRIM.P. 540(C), (D).

[o]nce attachment occurs, the accused at least is entitled to the presence of appointed counsel during any 'critical stage' of the postattachment proceedings; what makes a stage critical is what shows the need for counsel's presence. Thus, counsel must be appointed within a *reasonable time after attachment* to allow for adequate representation at any critical stage before trial, as well as at trial itself.

*Rothgery*, 554 U.S. at 212, 128 S.Ct. 2578 (emphasis added). Justice Alito in a concurring opinion further explained that the Court has "rejected the argument that the Sixth Amendment entitles the criminal defendant to the assistance of appointed counsel at a probable-cause hearing." *Rothgery*, 554 U.S. at 216, 128 S.Ct. 2578 (Alito, J., concurring). Rather, the Sixth Amendment requires "the appointment of counsel only after the defendant's prosecution has begun, and then only as necessary to guarantee the defendant effective assistance at trial." *Id.* at 217, 128 S.Ct. 2578 (Alito, J., concurring).

Pennsylvania's Rules of Criminal Procedure governing the appointment of counsel in criminal cases conform to *Rothgery*. Rule 122 states that counsel shall be appointed "in all court cases, *prior to the preliminary hearing* to all defendants who are without financial resources or who are otherwise unable to employ counsel." Pa. R.Crim.P. 122(A)(2) (emphasis added). At a preliminary arraignment, the defendant is advised of the charges against him, given a copy of the warrant and bail is set. These events do not require the presence of counsel because no rights are affected and there is no impact on the effectiveness of counsel's representation at trial.

Therefore, there is no right to counsel *at* the preliminary arraignment.

In short, we conclude that the amended complaint does not state a cause of action for actual denial of counsel. It alleges that public defenders do not represent indigent defendants at every preliminary arraignment. However, it is only thereafter that the indigent criminal defendant has a right to counsel.

### Conclusion

The amended complaint does not state a cause of action for either constructive or actual denial of counsel, and the trial court correctly sustained the County's preliminary objections. The funding at any office of public defender presents a series of political and public policy challenges, as do all programs established to serve society's less fortunate. These questions are better resolved in the political process, which includes the County's budgetary processes.

For these reasons, we affirm the order of the trial court sustaining the County's preliminary objections and dismissing the amended complaint.[10]

### ORDER

AND NOW, this 14th day of October, 2014, the order of the Luzerne County Court of Common Pleas, dated October 22, 2013, is hereby AFFIRMED.

---

10. Because we affirm the trial court's dismissal of the amended complaint, we need not address the question of whether the current Chief Public Defender was an indispensable party or the County's cross-appeal.