# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Martin, Jr., Richard Fidler and   :
Tammi Iams,   :
               Appellants   :
   :
         v.   :
   :
Donegal Township, James Bauer,   :
Randy Polan, Ed Shingle, Kathleen   :
Croft and Washington County Board   :   No. 369 C.D. 2022
of Elections   :   Submitted: December 9, 2022

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION BY
JUDGE COVEY                      FILED: April 13, 2023

        Richard Martin, Jr. (Martin), Richard Fidler (Fidler), and Tammi Iams (Iams) (collectively, Appellants) appeal from the Washington County Common Pleas Court's (trial court) March 29, 2022 order that sustained in part the preliminary objections (Preliminary Objections) filed by Donegal Township (Township),[1] James Bauer (Bauer), Randy Polan (Polan), Ed Shingle (Shingle), Kathleen Croft (Croft), and the Washington County Board of Elections (Board of Elections) (collectively, Appellees) to Appellants' action for declaratory judgment and injunctive relief (Complaint), and dismissed the Complaint with prejudice. Appellants present two issues for this Court's review: (1) whether Iams had standing to bring the declaratory judgment action; and (2) whether Section 402(e) of The Second Class Township

---

[1] The Township is a second class township. *See* Reproduced Record at 2a.

Code (Code)[2] violates article VI, section 7 of the Pennsylvania Constitution.[3, 4]  After review, this Court affirms in part and reverses in part.

## Background[5]

Section 601 of the Code provides: "Townships shall be governed and supervised by boards of supervisors[,]" which "shall consist of three members or, if approved by the electors under [S]ection 402(b) [of the Code, 53 P.S. § 65402(b)], five members."  53 P.S. § 65601.  Appellants are Township voters and taxpayers, and were elected members of the Township's Board of Supervisors (Board) which, prior to the November 2020 General Election, consisted of five members.[6]  *See* Complaint ¶¶ 2-4, 13-16 (Reproduced Record (R.R.) at 9a-12a).  Iams and Croft were elected to the Board in the fall of 2017, to terms that expired in January 2022.  *See* Complaint ¶¶ 4, 10, 16 (R.R. at 10a-12a).  Martin and Shingle were elected to the Board in the fall of 2019, to terms originally set to expire in January 2024.  *See*

---

[2] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 65402(e).

[3] PA. CONST. art. VI, § 7 (governing the removal of civil officers).

[4] Appellants present five issues in their Statement of Questions involved: (1) whether the trial court erred by holding that Section 402(e) of the Code does not violate article VI, section 7 of the Pennsylvania Constitution; (2) whether the trial court erred by holding that the Township's 2020 referendum reducing the size of its Board of Supervisors (Board) from five to three members (Referendum) was a change in the Township's form of government; (3) whether the trial court erred by holding that *South Newton Township Electors v. South Newton Township Supervisor Bouch*, 838 A.2d 643 (Pa. 2003), and *In re Petition to Recall Reese*, 665 A.2d 1162 (Pa. 1995), are not applicable to the present action; (4) whether the trial court erred by holding that Iams lacks standing to bring this action; and (5) whether the trial court erred by sustaining in part Appellees' Preliminary Objections.  *See* Appellants' Br. at 4.  However, in the Argument portion of their brief, Appellants consolidated the issues, asserting that the trial court erred by holding that: (1) Appellants' removal from their Board supervisor positions did not violate article VI, section 7 of the Pennsylvania Constitution; (2) the Referendum changed the form of the Township's government; and (3) Iams lacks standing to bring this action.  *See* Appellants' Br. at 13-24.  This Court has reordered and consolidated Appellants' issues for clarity of discussion.

[5] The facts are as alleged in the Complaint.

[6] In the November 2016 General Election, Township voters passed a referendum to expand the Board from three to five members.

2

Complaint ¶¶ 2, 9, 16 (R.R. at 9a-12a). Fidler was elected to the Board in the fall of 2019, to a term originally set to expire in January 2026. *See* Complaint ¶¶ 3, 16 (R.R. at 10a, 12a).

> Section 402(e) of the Code states:
>
> At the first municipal election following approval of the question providing for a return to a three-member board, three supervisors shall be elected to serve from the first Monday of January after the election, when the terms of the officers of the five-member board of supervisors shall cease. The three candidates receiving the highest number of votes for the office of supervisor shall be elected. The candidate receiving the highest number of votes shall serve for a term of six years. The candidate receiving the second highest number of votes shall serve for a term of four years. The candidate receiving the third highest number of votes shall serve for a term of two years. . . .

53 P.S. § 65402(e).

In the November 2020 General Election, Township electors voted to pass a referendum to reduce the Board's composition from five to three members, pursuant to Section 402(d) of the Code (Referendum).[7] *See* Complaint ¶¶ 17-18

---

[7] Section 402(d) of the Code provides:

> In townships in which the electorate has opted for a five-member board, the township shall return to a three-member board of supervisors upon petition of at least five percent of the electors of the township, or under a resolution of the board of supervisors, and upon approval by a majority of electors voting at the next municipal or general election. The referendum petition shall be filed with the county board of elections not later than the thirteenth Tuesday before the next municipal or general election. The county board of elections shall place the question before the electors as provided under the "Pennsylvania Election Code[, Act of June 3, 1937, P.L. 1333, *as amended*, §§ 2600-3591]." The form of the question shall be as follows:

| Should this township return to a | Yes |
| three-member board of supervisors? | No |

(R.R. at 12a). On May 18, 2021,[8] Polan, Shingle, Bauer, Croft, and Iams won the Board supervisor Primary Election.[9] *See Martin v. Donegal Twp.* (Pa. Cmwlth. No. 1062 C.D. 2021, filed Dec. 17, 2021). In the November 2021 General Election, Polan received the highest number of votes, while Bauer received the next highest, and Shingle received the lowest number of votes. *See* Complaint ¶¶ 7-9 (R.R. at 10a-11a). Thus, effective on Monday, January 3, 2022, Iams' and Croft's terms

---

The county board of elections shall tabulate and publish the results of the referendum within [30] days of the election. In no event shall the question of reducing the five-member board of supervisors be voted on more than once in any five-year period.

53 P.S. § 65402(d).

[8] On April 8, 2021, Appellants filed a complaint in the trial court against the Board of Elections, the Township, Shingle, and Croft, seeking that the trial court: declare Section 402(e) of the Code unconstitutional as applied herein; enjoin the enforcement of Section 402(e) of the Code; enjoin the Board of Elections from conducting an election for Township Supervisor in the 2021 Primary Election or, alternatively, from counting the votes for such offices and thereafter certifying the election; enjoin the removal of Martin and Fidler before the expiration of their office terms; and declare that those supervisors can remain in office until their terms expire. On April 15, 2021, Appellants filed a petition for preliminary injunction which, after a hearing, the trial court denied on April 16, 2021. On April 21, 2021, Appellants appealed to this Court. On April 30, 2021, Appellees filed preliminary objections to the Complaint. On May 13, 2021, this Court affirmed the trial court's April 16, 2021 order denying the petition for preliminary injunction for failure to meet the necessary criteria, in particular, the primary election would not result in anyone being removed from office. *See Martin v. Wash. Cnty. Bd. of Elections* (Pa. Cmwlth. No. 486 C.D. 2021, filed May 13, 2021).

[9] On May 20, 2021, Appellants filed an amended complaint in the trial court against the Township, Shingle, and Croft, seeking to enjoin the election and a declaration that Section 402(e) of the Code is unconstitutional, and that Martin and Fidler can carry out their terms. On June 1, 2021, Appellees filed preliminary objections, arguing that Appellants failed to join indispensable parties (i.e., the Board of Elections, Polan, and Bauer). After a hearing, on September 17, 2021, the trial court sustained the preliminary objections and dismissed the amended complaint. On September 29, 2021, Appellants appealed to this Court. On December 17, 2021, this Court held that although the Board of Elections was not an indispensable party, Polan and Bauer were indispensable parties. Because failure to join indispensable parties deprived the trial court of jurisdiction over the matter, this Court vacated the trial court's order and remanded the matter to the trial court to dismiss the amended complaint for lack of jurisdiction. *See* Complaint ¶¶ 22-25 (R.R. at 13a); *see also* Complaint Ex. A (R.R. at 17a); *Martin v. Donegal Twp.* (Pa. Cmwlth. No. 1062 C.D. 2021, filed Dec. 17, 2021).

4

would expire, Martin's and Shingle's terms would end two years early, Fidler's term would end four years early, and Polan, Bauer, and Shingle would be sworn in as the new three-member Board. *See* Complaint ¶¶ 4, 10, 16, 20-21, 34-35 (R.R. at 10a-13a, 15a).

On December 29, 2021, Appellants filed the Complaint in the trial court challenging Martin's and Fidler's removal from the Board before their elected terms expired as violative of article VI, section 7 of the Pennsylvania Constitution, based on *South Newton Township Electors v. South Newton Township Supervisor Bouch*, 838 A.2d 643 (Pa. 2003), and *In re Petition to Recall Reese*, 665 A.2d 1162 (Pa. 1995), and, thus, the November 2021 Board supervisors' election was void *ab initio*. *See* Complaint ¶¶ 19-21, 28-29, 33-35 (R.R. at 12a-15a). Appellants requested the trial court to: (1) declare Section 402 of the Code unconstitutional as applied;[10] (2) enjoin its enforcement; (3) enjoin Martin's and Fidler's removal; (4) declare the November 2021 Board election invalid and the results void; and (5) award other appropriate relief. *See* R.R. at 16a.

On January 26, 2022, Appellees filed the Preliminary Objections in the nature of a demurrer[11] to Appellants' Complaint, arguing: (1) Appellants failed to

---

[10] "[A]n as-applied challenge 'does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right.'" *E. Coast Vapor, LLC v. Pa. Dep't of Revenue*, 189 A.3d 504, 511 (Pa. Cmwlth. 2018) (quoting *Johnson v. Allegheny Cnty. Intermediate Unit*, 59 A.3d 10, 16 (Pa. Cmwlth. 2012)).

[11]        "The question presented in a demurrer is whether, on the facts averred, the law indicates with certainty that no recovery is possible. In reviewing a [trial] court's decision to grant a demurrer, our Court's standard of review is *de novo*." *Stilp v. Gen. Assembly*, . . . 974 A.2d 491, 494 ([Pa.] 2009) (citations omitted). Thus, we will affirm a trial court's order sustaining preliminary objections and dismissal of a complaint "only in cases that are clear and free from doubt that the law will not permit recovery" by the appellant. *Cap. City Lodge No. 12, Fraternal Ord. of Police v. City of Harrisburg*, . . . 588 A.2d 584, 586-87 ([Pa. Cmwlth.] 1991). In

follow the Pennsylvania Election Code's (Election Code)[12] procedures for challenging the conduct and results of the November 2021 Board election; (2) Appellants failed to state a valid quo warranto action; (3) because Appellants are no longer Board members, they lack standing to sue; (4) Appellants' action for declaratory and injunctive relief is moot because it cannot bypass mandatory Election Code procedures; (5) the doctrine of laches applies because, despite knowing after the November 2020 Referendum was passed that the Board complement would be reduced to three members, Appellants waited until April 2021 to first challenge the process, and then waited until December 2021 to again challenge it; and (6) Appellants' action fails as a matter of law because they were not unconstitutionally removed from office. *See* R.R. at 21a-61a. Appellants opposed the Preliminary Objections. *See* R.R. at 62a-91a.

On February 28, 2022, the trial court heard argument on the Preliminary Objections. On March 29, 2022, the trial court overruled Appellees' Preliminary Objections as to the Election Code, quo warranto, mootness, and laches defenses, but sustained Appellees' Preliminary Objections that Iams lacked standing and that the Complaint failed to state a valid claim that Section 402(e) of the Code violates the Pennsylvania Constitution as applied to Appellants Martin and Fidler. *See* R.R. at 92a-112a. In reaching the latter holding, the trial court determined that *Bouch* and

ruling on preliminary objections in the nature of a demurrer, this Court accepts as true all well-pleaded facts in the complaint and draws all inferences reasonably deducible therefrom in favor of the nonmoving party. *Stone & Edwards Ins. Agency, Inc. v. Dep't of Ins.*, . . . 616 A.2d 1060, 1063 ([Pa. Cmwlth.] 1992). However, we "need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Id.* . . . And, in the face of doubt, our resolution should be in favor of reversing the grant of the demurrer.

*Vasquez v. Berks Cnty.*, 279 A.3d 59, 75-76 (Pa. Cmwlth. 2022) (italics added).

[12] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

*Reese* are distinguishable, and that the change in the number of Board members changed the Township's form of government. By April 11, 2022 praecipe, the trial court ordered its prothonotary to enter judgment in Appellees' favor and dismiss the Complaint *with prejudice*. *See* R.R. at 3a, 113a-114a. On April 12, 2022, Appellants appealed to this Court.[13]

On April 25, 2022, the trial court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b), which they did on May 9, 2022. On May 16, 2022, the trial court filed a statement pursuant to Rule 1925(a) adopting its March 29, 2022 opinion.

## Discussion

**Standing**

Appellants argue that the trial court erred by holding that Iams lacked standing to bring the declaratory judgment action.

The Declaratory Judgments Act's (DJA)[14] purpose is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations[.]" 42 Pa.C.S. § 7541(a). Accordingly, Section 7533 of the DJA specifies: "Any person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal

---

[13] "Our review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an error of law." *Ward v. Potteiger*, 142 A.3d 139, 142 n.6 (Pa. Cmwlth. 2016) (quoting *Pub. Advoc. v. Brunwasser*, 22 A.3d 261, 266 n.5 (Pa. Cmwlth. 2011)).

By September 12, 2022 letter (Letter), the Board of Elections notified this Court that it would not participate in this appeal, and "will proceed as directed by the Court following adjudication of this matter." Letter at 1.

[14] 42 Pa.C.S. §§ 7531-7541.

relations thereunder." 42 Pa.C.S. § 7533. However, "a person who is not adversely impacted by [a] matter he seeks to challenge does not have standing to proceed with the court system's . . . process." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 659 (Pa. 2005).

> The courts in our Commonwealth do not render decisions in the abstract or offer purely advisory opinions; consistent therewith, the requirement of standing arises from "the principle that judicial intervention is appropriate only when the underlying controversy is real and concrete. . . ." *City of Phila*[.] *v. Commonwealth* . . . , . . . 838 A.2d 566, 577 ([Pa.] 2003).
>
> Stated another way, a controversy is worthy of judicial review only if the individual initiating the legal action has been "aggrieved." *In re Hickson*, . . . 821 A.2d 1238, 1243 ([Pa.] 2003); *see also City of Phila*[.], 838 A.2d at 577.

*Pittsburgh Palisades Park*, 888 A.2d at 659. "An individual can demonstrate that he has been aggrieved if he can establish that he has a substantial, direct and immediate interest in the outcome of the litigation." *Fumo v. City of Phila.*, 972 A.2d 487, 496 (Pa. 2009).

> A substantial interest in the outcome of litigation is one that surpasses the common interest of all citizens in procuring obedience to the law. A direct interest requires a causal connection between the asserted violation and the harm complained of. An interest is immediate when the causal connection is not remote or speculative.

*Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1215 (Pa. Cmwlth. 2018) (citations omitted). "[I]t is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law." *Pittsburgh Palisades Park*, 888 A.2d at 660 (quoting *In re Hickson*, 821 A.2d at 1243).

8

The crux of Appellants' action is that the removal of a Board member before his/her elected term expires violates the Pennsylvania Constitution. Appellants pled in the Complaint that "[Iams] is a voter and taxpayer in [the] Township[,] as well as a current member of the [Board] who was elected in the fall of 2017 and whose term is set to expire in 2022 . . . [,]" Complaint ¶ 4 (R.R. at 10a), and "[f]ollowing the 2017 [General E]lection, the [Board] was comprised of five [s]upervisors, to wit: a. [] Iams was elected in the fall of 2017, taking office in January 2018 for a term of four (4) years. [] Iams'[] term expires in January 2022." Complaint ¶ 16 (R.R. at 12a). Although Iams was a sitting Board member when Appellants filed the Complaint, it was clear that her term would naturally expire on January 3, 2022. The Complaint does not contain any averment that Iams' term would prematurely end on January 3, 2022, like Martin's and Fidler's terms, that she has an immediate interest that is harmed in any manner by Section 402(e) of the Code's application in this instance, or that her interest in the outcome of this litigation in any way surpasses the common interest of other Township citizens/voters.[15] Thus, Iams did not have "rights . . . affected by a statute" on which the trial court could have issued declaratory judgment in her favor. 42 Pa.C.S. § 7533. Because Iams did not have a substantial, direct and immediate interest in the

---

[15] The taxpayer exception to the traditional standing requirements applies when

      (1) the governmental action would otherwise go unchallenged;

      (2) those directly and immediately affected by the complained of matter are beneficially affected and not inclined to challenge the action;

      (3) judicial relief is appropriate;

      (4) redress through other channels is unavailable; and

      (5) no other persons are better situated to assert the claim.

*Pittsburgh Palisades Park*, 888 A.2d at 662 (quoting *Consumer Party of Pa. v. Commonwealth*, 507 A.2d 323, 329 (Pa. 1986)). Because Martin and Fidler have challenged Section 402(e) of the Code's application, the taxpayer exception does not apply in this case.

outcome of the litigation, she was not aggrieved. Accordingly, the trial court properly concluded that Iams lacked standing to bring this action.

**Constitutionality**

Appellants[16] also argue that the trial court erred by concluding that Section 402(e) of the Code does not violate article VI, section 7 of the Pennsylvania Constitution.[17] Specifically, Appellants contend that because the Pennsylvania Supreme Court ruled in *Bouch* and *Reese* that article VI, section 7 of the Pennsylvania Constitution is the *only* method by which the Township could prematurely end Board supervisors' terms, and Section 402(e) of the Code, as applied, conflicts with article VI, section 7 of the Pennsylvania Constitution, Section 402(e) of the Code is unconstitutional. Appellants further assert that, contrary to the trial court's reasoning, the Referendum did not change the Township's form of government so as to abolish Martin's and Fidler's positions.

> This Court has declared:
>
> There is a strong presumption in the law that legislative enactments are constitutional. *Christ the King Manor v. Dep't of Pub. Welfare*, 911 A.2d 624 (Pa. Cmwlth. 2006) (*en banc*), *aff'd per curiam*, . . . 951 A.2d 255 ([Pa.] 2008) . . . . A court will not declare a statute unconstitutional unless the constitutional violation is clear, palpable, and plain. *Id*. The court will resolve all doubts in favor of constitutionality. *Id*. Thus, a party challenging the constitutionality of a statute has a heavy burden of persuasion. *Id*.

*Phantom Fireworks*, 198 A.3d at 1221.

---

[16] Because Iams lacked standing to bring this action, this Court's references to *Appellants* hereinafter shall refer to only Martin and Fidler.

[17] Appellants clarify: "This case challenges a violation of the Pennsylvania Constitution resulting from [] Martin['s] and [] Fidler's unconstitutional removal from office prior to the expiration of their terms of office. Appellants do not challenge the constitutionality of Section []402(e) [of the Code] as a whole." Appellants' Br. at 7.

Here, Section 402(e) of the Code mandated that Polan, Bauer, and Shingle, the three supervisors elected in the November 2021 General Election after the Referendum was approved, "shall . . . serve from the first Monday of January after the election [(i.e., January 3, 2022)], when the terms of the officers of the five-member board of supervisors [(i.e., Iams, Croft, Martin, Shingle, and Fidler)] shall cease." 53 P.S. § 65402(e). Iams' and Croft's terms as Board members naturally concluded on January 3, 2022. Although Shingle would proceed to serve a new term as Board supervisor, Section 402(e) of the Code, as applied, cut short Martin's and Fidler's terms on January 3, 2022, by several years before they were due to expire.

According to Appellants, based on *Bouch* and *Reese*, article VI, section 7 of the Pennsylvania Constitution is the *exclusive* method by which they could be removed from their Board supervisor positions before their terms ended. Article VI, section 7 of the Pennsylvania Constitution declares:

> All civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. . . . **All civil officers elected by the people**, except the Governor, the Lieutenant Governor, members of the General Assembly and judges of the courts of record, **shall be removed by the Governor for reasonable cause**, **after due notice and full hearing**, **on the address of two-thirds of the Senate**.

PA. CONST. art. VI, § 7 (emphasis added).

In *Reese*, Kingston Citizens for Change (petitioners) filed a petition with the board of elections (petition) seeking to recall the mayor on the primary

11

ballot under the recall provisions of the Kingston Home Rule Charter.[18]  The mayor filed preliminary objections seeking to set aside the petition.[19]

The petitioners filed an amended petition and the mayor filed an amended preliminary objection challenging the recall on constitutional and other grounds.  The common pleas court ultimately sustained the mayor's amended preliminary objection to the amended petition, set aside the amended petition, and directed the board of elections not to place the recall question on the primary ballot, holding that the Kingston Home Rule Charter's recall provisions were unconstitutional and void.  The petitioners appealed to the Pennsylvania Supreme Court, which held:

> Article VI, [s]ection 7 [of the Pennsylvania Constitution] "indisputably applies to *all elected* officers, and sets forth in unambiguous language the exclusive method, absent impeachment, conviction of crime or misbehavior in office, of removing such elected officers."  *Rizzo* [*v. Citizens Comm. to Recall Rizzo v. Bd. of Elections*], . . . 367 A.2d [232,] 250-51 [(Pa. 1976)] (Concurring Opinion of Nix, J.) (emphasis in original).

---

[18] The recall provision provided:

> Petition demanding the recall of any elective municipal officer shall be signed by qualified electors equal in number to at least forty-five percent (45%) of the number of total votes cast for the office of mayor in the most recent election for mayor in the municipality.  No signature contained in a petition on recall shall be valid unless affixed to the petition within ninety (90) days prior to the filing of the petition.  If the majority of the votes cast on the question are in favor of recall, the office shall become vacant immediately upon certification of the results by the [c]ounty [b]oard of [e]lections.  Any vacancy created by recall shall be filled in accordance with Articles II and III of this [Home Rule] Charter.

*Reese*, 665 A.2d at 1164.

[19] The common pleas court ruled that the petition was facially defective and allowed the petitioners to amend it.  The common pleas court also permitted the mayor to file amendments to his original preliminary objections and additional preliminary objections.

> Having thus interpreted [a]rticle VI, [s]ection 7 [of the Pennsylvania Constitution], we must conclude that in providing for recall[,] the municipality of Kingston exceeded the powers conferred by [a]rticle IX, [s]ection 2 [of the Pennsylvania Constitution, PA. CONST. art. IX, § 2 (relating to home rule),] and the Home Rule Charter and Optional Plans Law.[20]  This method of removal is specifically denied by the [Pennsylvania] Constitution.

*Reese*, 665 A.2d at 1167.

In *Bouch*, township residents filed an amended complaint in the common pleas court seeking to remove a township supervisor pursuant to Section 503 of the Code for his alleged dereliction of duties.  Section 503 of the Code provides:

> Whether elected or duly appointed to fill a vacancy in elective office, a township officer shall be removable from office only by impeachment, or by the Governor for reasonable cause after due notice and full hearing on the advice of two-thirds of the Senate, or upon conviction of misbehavior in office, or of an infamous crime in accordance with the Constitution of Pennsylvania, but the officer's title to office may be tried by proceedings of quo warranto as provided by law.

53 P.S. § 65503.  The township supervisor filed preliminary objections, alleging that Section 503 of the Code violated article VI, section 7 of the Pennsylvania Constitution.  The common pleas court sustained the preliminary objections and dismissed the amended complaint.

The township residents appealed to the Pennsylvania Supreme Court, which, relying in part on *Reese*, held, *inter alia*, that Section 503 of the Code was unconstitutional because it conflicted with article VI, section 7 of the Pennsylvania Constitution, reasoning:

---

[20] Act of April 13, 1972, *as amended*, *formerly* 53 P.S. §§ 1-101 - 1-1309, repealed by Section 2(a) of the Act of December 19, 1996, P.L. 1158.  A similar act is now found in 53 Pa.C.S. §§ 2901-3171.

The causes of removal for township supervisors as well as the methods that existed before the passage of the 1874 [Pennsylvania] Constitution differed from those that existed after its passage. For example, with regard to the causes of removal, under Section 503 [of the Code], removal is permitted if the supervisor "fails to perform the duties of the office[.]"[] However, the pre-1874 constitutional statutes did not allow for removal for such neglect of duties. Under the 1834 Act,[21] for example, the penalty for neglect of duty was payment of a sum - not removal. The 1860 Act[22] did permit removal of the township supervisor, but only upon the officer's refusal to give a required security - not for neglecting the duties of the office. Unlike the allegations in [*In re*] *Georges Township* [*School Directors*, 133 A. 223 (Pa. 1926)], [the a]ppellants' allegations regarding [Bouch's] dereliction of duties would not have provided a basis for removal under the pre-1874 legislation.

Moreover, with regard to the method of removal, neither of these acts contained provisions allowing a certain number of citizens to petition for removal of the supervisor. Because there was no legislation existing prior to the 1874 [Pennsylvania] Constitution providing for the removal of a township supervisor via petition for his failure to perform the duties of the office, the tenet from *Georges Township* does not control.

*Bouch*, 838 A.2d at 649.

In the instant matter, the trial court concluded that *Bouch* and *Reese* are distinguishable and do not control the outcome of this case because Appellants' terms as Board supervisors were not cut short due to their misbehavior or for other cause but, rather, by operation of law. The trial court declared that, although *Bouch* and *Reese* "address the constitutional limitations on the Legislature's authority to direct when and under what circumstances a municipal officer may be removed from

---

[21] Act of April 15, 1834, P.L. 554 (subjecting township supervisors to a fine for neglect of duty).

[22] Act of March 16, 1860, P.L. 174 (providing for removal of township supervisors who failed to post a statutorily required bond).

14

office, th[o]se cases do not broadly hold that the Legislature lacks the authority to direct when and how municipal offices may be abolished." Trial Ct. Op. at 16.

The trial court referenced that "[article VI,] section [7] of the Pennsylvania Constitution is read in conjunction with [a]rticle VI, [s]ection 1 [of the Pennsylvania Constitution] . . . ." *Arneson v. Wolf*, 117 A.3d 374, 379 (Pa. Cmwlth.), *aff'd & adopted*, 124 A.3d 1225 (Pa. 2015) (*Arneson II*). Article VI, section 1 of the Pennsylvania Constitution declares: "All officers, whose selection is not provided for in this Constitution,[23] shall be elected or appointed as may be directed by law." PA. CONST. art. VI, § 1.

In *Arneson II*, the Pennsylvania Supreme Court expounded:

> [W]e have consistently interpreted these two constitutional provisions together to hold that when the [L]egislature creates a public office in accord with [a]rticle VI, [s]ection 1 [of the Pennsylvania Constitution], it may impose terms and limitations regarding tenure or removal as it sees fit, thereby limiting the Governor's power of removal under [a]rticle VI, [s]ection 7 [of the Pennsylvania Constitution]. [*Commonwealth ex rel. Sortino v.*] *Singley*, 392 A.2d [1337,] 1339 [(Pa. 1978)]; *Watson v. P*[*a.*] *Tpk. Comm'n*, . . . 125 A.2d 354, 356 ([Pa.] 1956) (explaining that [a]rticle VI, [s]ection 1 [of the Pennsylvania Constitution] expressly grants the [L]egislature authority to create a public office and to impose terms and limitations on the tenure or removal of one holding that office); *Burger v. Sch. Bd. of McGuffey Sch. Dist.*, . . . 923 A.2d 1155, 1164 ([Pa.] 2007) (recognizing that "when the General Assembly creates a public office it may impose terms and limitations on the removal of the public officer so created[]"). Where the [L]egislature creates a public office without imposing terms or conditions on the duration of an incumbent's tenure or the mode of removal, the method of removal provided in [a]rticle VI, [s]ection 7 [of the Pennsylvania

---

[23] "The township supervisor is not mentioned in any of the Constitutions of the [C]ommonwealth[.]" *In re Supervisors of Milford Twp., Somerset Cnty.*, 139 A. 623, 624 (Pa. 1927), *overruled on other grounds by Reese*.

15

Constitution] applies. *Watson*, 125 A.2d at 356-57 (applying the prior version of [a]rticle VI, [s]ection 7 [of the Pennsylvania Constitution]).

Whether the legislature has exercised its authority under [a]rticle VI, [s]ection 1 [of the Pennsylvania Constitution] to limit the Governor's removal power under [a]rticle VI, [s]ection 7 [of the Pennsylvania Constitution] depends upon the statute creating the public office. *Singley*, 392 A.2d at 1339 ("Whether an appointed civil officer holding a legislatively created office is subject to removal at the pleasure of the appointing power depends upon legislative intent, 'to be gleaned from the statute creating or regulating the office.'"). We have never required express language in a statute, i.e., that an appointee may only be removed for cause, to find a legislative limitation on the Governor's removal power. Rather, we look to the totality of the statutory language in accord with the oft-stated rules of statutory construction to glean the legislative intent.

*Arneson II*, 124 A.3d at 1227-28.

Here, the trial court interpreted that article VI, section 7 of the Pennsylvania Constitution does not apply when municipal voters abolish their governing body by referendum, *see* Trial Ct. Op. at 14, and the Referendum "repeal[ed] [the Township's] optional form of local government [when it] return[ed] to a three[-]member Board . . . ." *Id.* at 16. Relying on *Varner v. Swatara Township Board of Commissioners* (Pa. Cmwlth. No. 153 C.D. 2017, filed Feb. 21, 2017, *amended*, Mar. 10, 2017), and *Lyons v. Pittsburgh*, 586 A.2d 469 (Pa. Cmwlth. 1991), the trial court determined that a change in the number of members of a local governing body is a change in form of government and, therefore, *Bouch* and *Reese* do not apply.

In *Varner*, the board of commissioners enacted an ordinance in February 2015, that eliminated the nine-member by-ward system by reducing the number of commissioners, which were to be elected at-large, to five. At the 2015 municipal election, the transition from a by-ward to an at-large system began when

16

five commissioners elected by-ward whose terms were expiring were replaced by three members elected at-large. At the 2017 municipal election, the changeover would have been complete when the remaining four by-ward members with expiring terms were replaced by two members elected at-large, so that all five board members would have been elected at-large. However, in 2016, without petitioning the court, the board of commissioners enacted Ordinance 2016-7, which changed the system back to nine commissioners to be elected by-ward.

The petitioners filed a declaratory judgment action in the common pleas court contending that Ordinance 2016-7 was void under Section 401 of The First Class Township Code,[24] and seeking a declaration that court approval was required before a change could be made from an at-large to a by-ward system of electing commissioners. The board of commissioners opposed the action, arguing that article IX, section 11 of the Pennsylvania Constitution,[25] as implemented by the Municipal Reapportionment Act,[26] superseded Section 401 of The First Class Township Code. Finding that Section 401 of The First Class Township Code was not inconsistent with either article IX, section 11 of the Pennsylvania Constitution or the Municipal Reapportionment Act, the trial court concluded that Ordinance 2016-7 was void *ab initio*. On appeal, this Court affirmed the trial court's decision, reasoning that article

[24] Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. § 55401 (relating to the creation and alteration of wards).

[25] PA. CONST. art. IX, § 11 (within a year after the federal census is officially reported, municipalities consisting of governing bodies not entirely elected at[-]large shall be reapportioned into districts as nearly equal in population as practicable).

[26] 53 Pa.C.S. §§ 901-908. Section 903(a) of the Municipal Reapportionment Act implements article IX, section 11 of the Pennsylvania Constitution, stating, in pertinent part: "Within the year following that in which the [f]ederal census, decennial or special, is officially and finally reported and at such other times as the governing body deems necessary, each entity having a governing body not entirely elected at[-]large shall be reapportioned into districts by its governing body." 53 Pa.C.S. § 903(a). Section 904 of the Municipal Reapportionment Act adds that, if the governing body does not reapportion within one year of the federal census, resident electors may petition the common pleas court to take steps to do so. *See* 53 Pa.C.S. § 904.

17

IX, section 11 of the Pennsylvania Constitution and the Municipal Reapportionment Act were intended to ensure that elected officials selected by districts represented a population as equal as possible to other districts so that each voter would have equal voting weight and, because an at-large election was already the intention when the township enacted it, Ordinance 2016-7's purpose could not have been to carry out that goal but, rather, was an attempt to change the form of governance from a five-member *at-large board* to a nine-member *by-ward board*. Here, because the Referendum only changed the *number* of Board supervisors, and there was no intention to change the Township's *form of governance*, this Court holds that *Varner* is inapposite.[27]

The trial court also relied on *Lyons* to support its position that *Bouch* and *Reese* do not apply. The trial court reasoned that, in *Lyons*, this Court affirmed a common pleas court's determination that permitted "a home rule charter amendment that created district elections [that] caused a city councilman to lose his seat before the expiration of his term." Trial Ct. Op. at 8. However, "the amendment creating the district-wide electoral system," in *Lyons*, "constituted a change in the form of the [c]ity's government tantamount to the adoption of a new home rule charter." *Lyons*, 586 A.2d at 471. Again, as the Referendum in the instant matter did not change the form of government, *Lyons* is also inapposite.

Since this Court's rulings in *Varner* and *Lyons* do not support the trial court's attempt to distinguish *Bouch* and *Reese*, we are constrained to hold that *Bouch* and *Reese* control the outcome in this case. Under *Bouch* and *Reese*, article VI, section 7 of the Pennsylvania Constitution provides the exclusive method to

---

[27] The trial court also cited to *Borough of Warren v. County Board of Elections*, 425 A.2d 1113 (Pa. Cmwlth. 1981), in support of its position. However, because the *Warren* Court held that "provisions for the size of the council **and the basis for electing them** [] is a 'complete and separate form of government[,]'" *id*. at 1115 (emphasis added), *Warren* is also inapposite.

remove elected officials from office.[28]  Accordingly, Section 402(e) of the Code's method of terminating Board supervisor positions was unconstitutional as applied to Martin and Fidler.  Because it does not appear with certainty that Appellants' claim that they were unconstitutionally removed from office will not permit them to recover, the trial court erred by sustaining Appellees' Preliminary Objections and dismissing the Complaint on that basis.  *See Vasquez v. Berks Cnty.*, 279 A.3d 59 (Pa. Cmwlth. 2022).

## Conclusion

Based on the foregoing, this Court affirms the portion of the trial court's order sustaining the Preliminary Objection as to Iams' standing, and reverses the portion of the trial court's order sustaining the Preliminary Objection as to the constitutionality of Section 402(e) of the Code and dismissing the Complaint.

_____
ANNE E. COVEY, Judge

Judge Wallace did not participate in the decision in this matter.

---

[28] Notably, in response to the appellants' argument in *Bouch* that the result "allow[ed] township electors to burden the Governor and Senate with affairs that are not of statewide importance, which would waste government resources[,]" the Supreme Court stated: "[E]ven if we agreed that the constitutional removal method is not as practical as the one provided for in Section 503 [of the Code], we cannot disregard a controlling constitutional provision." *Bouch*, 838 A.2d at 647.

19

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Martin, Jr., Richard Fidler and : 
Tammi Iams, :
                Appellants :
  :
          v. :
  :
Donegal Township, James Bauer, :
Randy Polan, Ed Shingle, Kathleen :
Croft and Washington County Board :    No. 369 C.D. 2022
of Elections :

### O R D E R

AND NOW, this 13th day of April, 2023, the portion of the Washington County Common Pleas Court's (trial court) March 29, 2022 order sustaining Donegal Township's, James Bauer's, Randy Polan's, Ed Shingle's, Kathleen Croft's, and the Washington County Board of Elections' (collectively, Appellees) preliminary objection (Preliminary Objection) relative to Tammi Iams' standing is AFFIRMED. The portion of the trial court's order sustaining the Preliminary Objection as to the constitutionality of Section 402(e) of The Second Class Township Code, 53 P.S. § 65402(e), and dismissing Richard Martin, Jr.'s and Richard Fidler's action for declaratory judgment and injunctive relief (Complaint) is REVERSED.

The Complaint is hereby reinstated and the matter is remanded to the trial court with the direction that Appellees shall file an answer to the Complaint within 20 days of the date of this Court's remand of the record to the trial court in accordance with the Pennsylvania Rule of Appellate Procedure 2572, Pa.R.A.P. 2572.

Jurisdiction is relinquished.

 

_____
ANNE E. COVEY, Judge